Crawford *v.* Wilson.

SARATOGA GENERAL TERM, November, 1848.   *Cady, Paige, Willard, and Hand,* Justices.

CRAWFORD *v.* WILSON.

Words charging a person with having wilfully made a false declaration at a school district meeting, of his right to vote at such meeting, upon being challenged as unqualified, by a legal voter in such district, are actionable in themselves.

Such words impute an indictable misdemeanor, involving moral turpitude.

It seems that a charge against a person " that he had committed perjury by swearing in his vote at a school district meeting," imports a charge that he had wilfully made a false declaration at a school district meeting, of his right to vote at such meeting upon being challenged as unqualified; and that an action is maintainable for the speaking of such words, without a statement in the declaration, of extrinsic facts to which the words referred, and a colloquium concerning such facts.

Where a charge for teacher's wages in a school district, for the teaching of a son, was included in the rate bill made out against his father, and such charge was paid by the son; *held*, that such payment qualified the son to vote at the district meetings in such school district; he being a resident of the district and authorized to vote at town meetings of the town in which such district was situated.

Where the plaintiff had, in Nov. 1844, made a contract to teach school in a school district for four months, for $10 a month; and where, after he became 21 years of age, he had worked for his father 4½ months without any agreement about wages, but had told his father about the time he commenced work, that he should expect payment for his labor; and the circuit judge charged the jury that in determining whether the plaintiff was, on the 23d day of January, 1845, a qualified voter in the school district in which he resided, on the ground of a property qualification, they might take into consideration the amount equitably

Crawford *v.* Wilson.

due to him from his father, and the amount which would ultimately be due to him from the trustees of the school district, with whom he had made the contract to teach school, for that portion of his services rendered previous to the 23d of January, 1845; *Held* that the charge was correct.

No exception can be taken to the comments of a judge upon the evidence, in charging the jury, or to the mere expression of his opinion by way of advice to the jury as to such evidence, where he informs the jury, or gives them distinctly to understand, that they are to exercise their judgment upon such evidence, and to pass upon the same.

To warrant an unqualified direction to the jury in favor of one party or the other, the evidence must either be undisputed, or the preponderance must be so decided, that a verdict against it would be set aside.

Every person has a domicil; and he can only have one domicil at one and the same time.

The existing domicil always continues, until another is acquired; and by the acquisition of another, the former domicil is relinquished.

A domicil is the place where a person has fixed his habitation and has a permanent residence, without any present intention of removing therefrom.

If a person leaves the place of his domicil, temporarily, or for a particular purpose, and does not take up a permanent residence elsewhere, he does not change his domicil.

The words legal residence, and domicil, are convertible terms.

Where a person whose place of legal residence and domicil was in S., entered into a contract to teach a school for four months, in M., and during the four months returned to S., and acted as secretary pro tem, of a school district meeting, and at the end of the four months left M. permanently; *Held* that he did not lose his residence and domicil in S.

Where the entry of a judgment upon a verdict obtained by a party is delayed by a bill of exceptions of his adversary, and such party dies after the service of the bill of exceptions, and before the decision of the court thereon, the revised statutes (*vol. 2, p.* 387, §§ 2, 4,) have no application; and the court, upon common law principles, without regard to the lapse of time, will allow the judgment to be entered up as of a term previous to such party's death.

THIS was an action for slander. The cause was tried before Judge Willard, at the Saratoga circuit, in May, 1846. The declaration contained eight counts, three for uttering slanderous words, and five for the publication of a libel. The first count alleged that the plaintiff was a taxable inhabitant of school district No. 5 in the town of Saratoga Springs; that a special district meeting of the taxable inhabitants of such district was held on or about the first day of January, 1845, &c. which was regularly convened and organized; and that the plaintiff being a taxable inhabitant of the district, and qualified to

vote, &c. offered to vote at the meeting, and was challenged as unqualified to vote, &c.; that thereupon the plaintiff made the declaration required by the statute; and that upon making such declaration he was permitted to vote, and did vote, &c. The count then alleged that the defendant intending to cause it to be believed that the plaintiff had been guilty of a misdemeanor, &c., falsely and maliciously spoke and published of and concerning the plaintiff, and of and concerning the said special school district meeting, and of and concerning the said declaration and vote made and given by the plaintiff, &c. as follows: " Charles Crawford has committed perjury" (meaning that the plaintiff had been guilty of a misdemeanor) " in swearing in his vote at the meeting," (meaning said school meeting.) And the count contained an allegation that the words were uttered with intent to convey, and were so understood to convey, a charge against the plaintiff of being guilty of a misdemeanor. The second count, without reference to the school district meeting, and the declaration made and vote given by the plaintiff at such meeting, contained an allegation of a general charge by the defendant, that the plaintiff " had committed perjury." The third count, in like manner, without reference to the extrinsic facts set out in the first count, alleged a general charge by the defendant as follows: " Charles Crawford (meaning the plaintiff) is guilty of perjury and is upon the threshold of the state's prison;" thereby meaning, that the plaintiff had been guilty of a crime that subjected him to imprisonment in the state's prison. The fourth count contained a colloquium concerning the district meeting and the plaintiff's declaration made and vote given thereat, and charged that the defendant published a libel to Benjamin Crawford, father of the plaintiff, and to others, as follows: " I" (defendant meaning) " have conversed with a number of inhabitants of this district" (meaning inhabitants of school district No. 5) " who have manifested a belief that your son Charles" (meaning the plaintiff) " committed perjury" (meaning that the plaintiff was guilty of a misdemeanor) " by swearing in his vote" (meaning declaring and voting at said meeting as aforesaid) " by having been taxed and paying a rate

bill within one year in the district," (meaning the said school district.)   " I" (defendant meaning) " am the man who will enter a complaint against the suspected perjurer." (Thereby meaning that the plaintiff was supposed to have been guilty of a misdemeanor in making said declaration.) The 5th, 6th, 7th and 8th counts, without any colloquium concerning the district meeting, and the declaration made and vote given by the plaintiff, charged the defendant, generally, with the publication of the said libel, setting forth in each of said counts, different portions thereof alleged to be libellous.   The defendant pleaded the general issue, and annexed to his plea a notice of justification ; in which he alleged, that such district meeting was not regularly convened and organized, and that the plaintiff was not a legally qualified voter in such district, &c. and being unqualified, wilfully and falsely declared himself a voter, &c. and voted, &c.

On the trial the plaintiff proved the publication of the libel set out in the declaration, being in the form of a letter addressed to Benj. Crawford, the father of the plaintiff.   Hiram Van Benschoten, a witness for the plaintiff, testified, that after the school meeting on the 22d of January, the defendant said " Charles Crawford had committed perjury by swearing in his vote at the school district meeting, and stood on the threshold of state's prison."   The same witness testified that he understood the charge related to the district meeting.   He also testified that there was a discussion between him and the defendant, whether it was perjury or a misdemeanor.   Witness' father and brother were present, when the defendant spoke the words.   Samuel Hustis, a witness for the plaintiff, testified that about the 1st of June, 1845, the defendant said " the plaintiff had perjured himself."   The charge was that he had committed perjury in swearing in his vote at the school district meeting.

The defendant moved for a nonsuit on the grounds, 1. That the charge, both verbal and written, was of perjury in swearing in his vote at a school district meeting ; and as no oath could be there taken, perjury could not be committed. 2. If the words could be construed into a charge of misdemeanor, it was incum-

Crawford *v.* Wilson.

bent on the plaintiff to show a school district meeting duly or-ganized, &c. at which the offence might have been committed. The motion for a nonsuit was denied, and the defendant ex-cepted. The defendant then moved that the counts containing a general charge of perjury be stricken out, being unsupported by any evidence. This motion was denied, and the defendant excepted. The defendant also moved that the counts for slander setting forth a charge of perjury be stricken out; as it appeared from those counts that the charges therein contained were explained by reference to a transaction wherein perjury could not be committed; and that the plaintiff should not be per-mitted to proceed upon those counts, or any or either of them, in which the charge was thus explained. These motions were also denied by the court, and the defendant excepted.

The defendant proved that the plaintiff taught school in Malta, in the winters of 1844 and 1845; that he commenced in November, 1844, and was to teach 4 months, for $10 a month and his board; that he boarded in the district; and that his father lived in the town of Saratoga Springs, about 3 miles north from the place where the plaintiff taught. The defendant also proved by the plaintiff's father, that the plaintiff was 23 years of age in March, 1846; that he owned no real estate and had no personal property, except what was due him for $4\frac{1}{2}$ months work for his father, which at $10 a month would amount to $45; that there had been no agreement about wages, between the plaintiff and his father; and that in April or May the plaintiff intimated that he should expect payment for his labor. It was proved that the plaintiff was born in the town of Saratoga Springs. It appeared that no rate bill had been made out in 1844, in school district No. 5, against the plaintiff. But that one was made out against Benjamin Crawford, the plaintiff's father, and that the plaintiff paid of the amount assessed against B. Crawford, 25 cents, being for the plaintiff's own schooling; which payment was noted in pencil, on the rate bill. The 25 cents was paid by the plaintiff to Douglass, the teacher of the school, and the teacher entered in pencil on the rate bill, that it had been paid by the plaintiff. The plaintiff

Crawford *v.* Wilson.

after teaching in Malta, went to Stillwater and taught there. It appeared that the district school meeting held in school district No. 5, on the 23d of January, 1845, was regularly called and organized, and that at such meeting the plaintiff acted as clerk pro tem. It further appeared that at such meeting the plaintiff offered to vote, and was challenged as unqualified ; and that upon being challenged, he made the declaration required by law, and voted. The plaintiff's father was a trustee of the district. At the time the plaintiff made the declaration he said he was a voter. It was proved that he had not hired any real estate in the district.

The judge charged the jury, 1. That Douglass, the teacher, had authority to receive payment of a rate bill ; and that the payment to him by the plaintiff, of the 25 cents for his own schooling, although it was included in the rate bill against his father, was in legal effect paying a rate bill against himself; 2. That the jury, in coming to a conclusion whether the plaintiff was a voter in district No. 5, might take into consideration the amount equitably due him from his father, although there had been no agreement or promise to pay, by his father, and also the amount which would ultimately be due him for teaching in the town of Malta, for the services performed by him previous to the 23d of January, 1845 ; 3. That he, (the circuit judge,) did not think that the facts proved operated as an interruption of the plaintiff's residence at Saratoga Springs, at the time he voted ; 4. That so long as the plaintiff had his domicil in Saratoga Springs, no matter where his temporary place of business was, his residence was at Saratoga Springs; and 5. That prima facie the place of birth is a man's domicil, and until the domicil is intentionally changed, the residence is at the place of domicil. 6. The circuit judge also intimated an opinion that from the evidence, the domicil of the plaintiff, at the time of the district school meeting, was at his father's in Saratoga Springs. The defendant excepted to the judge's charge. The jury found for the plaintiff a verdict of $200.

*W. A. Beach*, for the defendant.

*John C. Hulbert*, for the plaintiff.

*By the Court*, PAIGE, J. By the act relating to common schools, passed May 26, 1841, (1 *R. S.* 540, 3*d ed.*) it is provided (*sec.* 7,) that every male person of full age *residing in any district* and entitled to hold lands in this state, who owns or hires real property in such district subject to taxation for school purposes, and every resident of such district authorized to vote at town meetings of the town in which such district is situated, and *who has paid any rate bill* for teacher's wages in such district, within one year preceding, or who has paid any district taxes within two years preceding, or who owns any personal property liable to be taxed for school purposes in such district exceeding $50 in value exclusive of such as is exempt from execution, and no others, shall be entitled to vote at any school district meeting held in such district. Section 8 provides that, if any person offering to vote at any school district meeting shall be challenged as unqualified, by any legal voter of such district, the chairman presiding at such meeting shall require the person so offering, to make the following declaration: "I do declare and affirm that I am an actual resident of this school district, and that I am qualified to vote at this meeting." And every person making such declaration shall be permitted to vote on all questions proposed at such meeting, &c. Section 9 declares that every person who shall wilfully make a false declaration of his right to vote at a district meeting, upon being challenged, &c. shall be deemed guilty of a misdemeanor and punishable by imprisonment in the county jail for a term not exceeding one year, nor less than six months, in the discretion of the court.

Words charging a person with having wilfully made a false declaration at a school district meeting, of his right to vote at such meeting, upon being challenged as unqualified, by a legal voter of such district, would be actionable in themselves; as they impute a misdemeanor involving moral turpitude, for

which the person against whom the charge is made, can be proceeded against by indictment. Such a charge comes within the rule laid down in *Brooker* v. *Coffin*, (5 *John.* 188;) which was as follows: "In case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment, the words will be in themselves actionable." This rule was repeated, and followed, in *Martin* v. *Stilwell*, (13 *John.* 275,) and in *Young* v. *Miller*, (3 *Hill*, 22.) A person in wilfully making a false declaration in a school district meeting of his right to vote at such meeting, utters in the most solemn manner a wilful falsehood, in order that he may exercise the privilege of voting; a privilege to which he is not entitled, and the exercise of which by him, is a base fraud upon the legal voters of the district. In the case of *Young* v. *Miller*, (3 *Hill*, 25,) Cowen, J. lays down the rule, that "every indictable offence which is at the same time infamous or disgraceful in a general sense—any offence which detracts from the character of the offender as a man of good morals," is embraced within the class of offences involving moral turpitude. In *Martin* v. *Stilwell*, (13 *John.* 275,) words which charged the plaintiff with keeping a bawdy house were held actionable. In *Gibbs* v. *Dewey*, (5 *Cowen*, 503,) the charge was, that the plaintiff had handed papers to a juror, to influence or bribe the jury; and the words were held actionable. In *Alexander* v. *Alexander*, (9 *Wend.* 141,) the defendant charged the plaintiff with having forged his name to a petition to the legislature; and although the imputed offence was only a misdemeanor, the words were held actionable. In *Young* v. *Miller*, (3 *Hill*, 21,) the charge was, that the plaintiff had removed the defendant's landmarks; and the words were held actionable in themselves. The charge of having wilfully made a false declaration, in a school district meeting, of a right to vote at such meeting, also comes within the rule laid down in *Demarest* v. *Haring*, (6 *Cowen*, 76,) as to slanderous words actionable in themselves; inasmuch as it imputes a misdemeanor for which a corporal punishment may be inflicted in a temporal court.

Crawford *v.* Wilson.

The defendant, on the trial, moved for a nonsuit, on two grounds. The first was, that as the charge of perjury, both written and verbal, referred to the plaintiff's swearing in his vote at a school district meeting, in which perjury could not be committed, the action could not be maintained. As no oath is required to be taken by a person whose vote is challenged at a school district meeting, perjury cannot be committed by his swearing, at such meeting, that he is a qualified voter. But the question arises whether the charge that the plaintiff "committed perjury by swearing in his vote at the school district meeting" does not import a charge that he wilfully made a false declaration at the school district meeting, of his right to vote at such meeting upon being challenged as unqualified; which charge, as we have seen, imputes an indictable misdemeanor involving moral turpitude. In *Alexander* v. *Alexander*, (9 *Wend*. 141,) the allegation in the declaration was, that the defendant had charged generally that the plaintiff had been guilty of forgery, that he had forged his, (the defendant's) name; and the proof was, that the defendant had said that the plaintiff had forged his name to a petition, and that he could put him in state's prison for it; and it was held that the forgery alleged in the declaration to have been charged by the defendant upon the plaintiff, was not to be understood as meaning, necessarily and exclusively, a felonious forgery, punishable as such; but such a forgery as would subject him to criminal punishment of some description, if he had in fact committed it; that a petition to the legislature may be of such a character, that the forging of a name to it would be a misdemeanor and punishable as such; that so far as the nature of the petition was disclosed by the defendant to the witnesses, in explanation of his charge, it might have been one of that description; and that if it was not, it was incumbent on the defendant to show it. In *Gibbs* v. *Dewey*, (5 *Cowen*, 503,) the charge in the declaration was, that the defendant had accused the plaintiff of handing papers to influence or bribe the jury. On a motion in arrest of judgment, it was held, that the words imported a charge of the crime of embracery; that the expression that a

man bribed a jury by handing them papers, would not be understood as conveying a charge of bribery, in its ordinary signification, but simply as imputing to him the offence of improperly attempting to influence them, through the medium of the papers thus handed to them. And it was also held that the words were actionable; as embracery was an offence at common law, as well as by statute, and punishable by fine and imprisonment. It may well be contended, upon the authority of these cases, that the charge of perjury, in this case, against the plaintiff by swearing in his vote at the school district meeting, imports the minor offence of misdemeanor in wilfully making a false declaration of his right to vote at such meeting. If under an allegation in the declaration of a general charge of forgery against the plaintiff, which, in its ordinary signification, is understood as meaning felonious forgery, evidence of a charge that the plaintiff had forged the defendant's name to a petition to the legislature, which could only be a misdemeanor, supports the declaration; and if a charge that the defendant accused the plaintiff with handing papers to a jury, to bribe them, imports the crime of embracery, which is a misdemeanor, and not bribery which is a felony, why may not the charge in this case, against the plaintiff, of perjury by swearing in his vote at the school district meeting, import the minor offence of misdemeanor in wilfully making a false declaration of his right to vote, inasmuch as· perjury cannot be committed by swearing in a vote at such meeting. In neither of the cases of *Alexander* v. *Alexander*, or of *Gibbs* v. *Dewey*, was there any statement of extrinsic facts to which the words referred, or a colloquium concerning such facts, or innuendoes pointing the application of the words to them. The same remark applies to the 2d and 3d counts of the declaration in this case. In these counts a general charge of perjury is alleged, without any reference to the school district meeting. There are some authorities which go to sustain the action upon these counts, although the proof shows that the defendant, in making the charge, referred to the plaintiff's swearing in his vote at the school meeting.

Crawford *v.* Wilson.

In *Philips* v. *Barber*, (7 *Wend.* 440,) where the defendant charged the plaintiff with stealing his wood, but the charge was made in reference to a transaction innocent in itself, and so understood by several persons, it was held that as it was fairly to be inferred that others were present at the time of speaking the words, who understood it in some other way, the action was maintainable. In *Kennedy* v. *Gifford*, (19 *Wend.* 290,) it was held, where a charge is made which the unlearned would understand as imputing a crime, that the action of slander lies, although in the nature of things such crime could not have been committed; unless it be shown that the charge was made only in the hearing of those who knew that the crime could not be committed. So in this case the unlearned would understand from the defendant's charge that the defendant imputed the crime of perjury to the plaintiff; although perjury could not be committed in swearing in a vote at a school district meeting. In *Cook* v. *Bostwick*, (12 *Wend.* 50,) Savage Ch. J. held, if the defendant in that case intended to impute perjury to the plaintiff, he ought not to be excused on the ground that perjury could not have been committed. It is only where words are such as cannot of themselves be slanderous that the declaration must show specially such extrinsic facts as give them point. This is not necessary, where the words may have a meaning different from what they import, or where they are merely of doubtful meaning. If the words charged be capable, in themselves, of a slanderous sense, there is no need of any averment beyond the common one of an intent to charge a crime, especially after verdict. (*Kennedy* v. *Gifford*, 19 *Wend.* 299, *per Cowen, J.*) "If the words are of doubtful signification it is the province of the jury to determine in what sense they were used." (*Per Sutherland, J.*, 3 *Cowen*, 240; 19 *Wend.* 299, *Cowen, J.*) If the words in this case may be understood as in themselves imputing either the crime of perjury, or a misdemeanor, then they are capable of a slanderous sense, and an action may be maintained for the speaking of them; without any special averment of extrinsic facts to give them point.

Crawford *v.* Wilson.

No objection was taken on the trial as to a variance between the words as proved and the words as alleged in the declaration.

But the motion for a nonsuit was properly denied, because the action was clearly maintainable on the 5th, 6th, 7th and 8th counts, which are founded on the libellous letter addressed by the defendant to the father of the plaintiff, without any proof of the facts set forth in the 1st and 4th counts in relation to the school district meeting ; as such counts contain no colloquium concerning such meeting. The defendant, in the libel, states, "that the inhabitants of the district have manifested a belief that the plaintiff committed perjury by swearing in his vote, by having been taxed and paying a rate bill, &c. and I am the man who will enter a complaint in behalf of the people, against the suspected perjurer." This is a censorious writing, which the law will infer was made with a malicious intent to blacken the memory of the plaintiff, and to expose him to public hatred and contempt. (*People* v. *Cromwell*, 3 *John. Cas.* 354. *Root* v. *King*, 7 *Cowen*, 613.)

The second ground on which the defendant applied for a nonsuit was, that if the words could be construed into a charge of misdemeanor, it was incumbent on the plaintiff to show a school district meeting duly organized, &c. at which the offence might have been committed. If the action was sought alone to be maintained on the first count of the declaration, in which the plaintiff sets forth specially the holding of the school district meeting, &c. and alleges that the slanderous words were spoken of and concerning such meeting, proof of such meeting, &c. by the plaintiff, would undoubtedly have been necessary. In *Emery* v. *Miller*, (1 *Denio*, 208,) it was held, where slanderous words are laid as spoken in reference to a particular occasion, that they must be proved substantially as laid ; and the remark of Cowen, J. in *Jacobs* v. *Fyler*, (3 *Hill*, 572,) intimating a different opinion, was not approved. The case of *Emery* v. *Miller*, does not authorize proof of "general words importing a charge of perjury in support of a declaration which alleges that the charge was specific and particular." And see *Aldrich* v. *Brown*, (11 *Wend.* 596.)

In the 2d and 3d counts the slanderous words are not laid as spoken in reference to a particular occasion. And neither in the 5th, 6th, 7th, and 8th counts is the libel laid to have been composed and published in reference to a particular occasion. There is therefore no foundation for the second ground on which the nonsuit was applied for.

The defendant had no right to call upon the court to strike out the counts in the plaintiff's declaration containing a general charge of perjury, or to prohibit the plaintiff from proceeding upon those counts in which the charge of perjury was explained by reference to the school district meeting.

The judge charged the jury that the payment by the plaintiff, to Douglass the teacher of the school in school district No. 5, of 25 cents for his own schooling, although it was included in the rate bill against his father, was in legal effect, the payment of a rate bill against himself. Section 8, of the act of 1841, relative to common schools, (1 *R. S.* 540, § 80, 3d ed.,) provides that every resident of a school district authorized to vote at town meetings of the town, &c. and " who has paid any rate bill for teacher's wages in such district, within one year preceding," shall be entitled to vote, &c. The payment by the plaintiff of a part of the rate bill for teacher's wages, although included in the sum assessed against his father, comes within the terms of the act. The act only requires the payment of a rate bill, to qualify the person making the payment, to vote. It does not require that his name should be contained in the rate bill. It is the payment of the rate bill which creates the qualification. I think that the circuit judge committed no error in this part of his charge.

I see no error in that part of the charge in which the judge told the jury that in determining whether the plaintiff was a voter in district No. 5, on the ground of a property qualification, they might take into consideration the amount equitably due the plaintiff from his father, and the amount which would ultimately be due to him from the trustees of the school district in Malta in which he taught school, for that portion of his services rendered previous to the 23d of January, 1845. Section 7 of the act of 1841, (1 *R. S.* 540, 3d ed.,) authorizes every res-

ident of the district to vote, who owns personal property liable to be taxed for school purposes in the district exceeding $50 in value exclusive of such as is exempt from execution. The charge cannot fairly bear the interpretation of excluding from the consideration of the jury the question whether any thing was due to the plaintiff from his father. I think the charge leaves that question open for the jury to pass upon. If any thing ultimately became due to the plaintiff, from the trustees in Malta for services rendered previous to the 23d of January, 1845, it was proper for the jury to take it into consideration. If nothing did ultimately become due for such services, in consequence of the plaintiff's non-fulfilment of his contract, the defendant should have shown it.. Nothing to the contrary appearing, the jury had a right to infer from the evidence, that the plaintiff taught the whole four months, as required by his contract.

An exception is taken to the opinion expressed by the circuit judge, that he did not think that the facts proved operated as an interruption of the plaintiff's residence at Saratoga Springs, at the time he voted at the district meeting. It is objected that this was equivalent to a peremptory direction as to the law upon that question ; and that it should have been left to the jury to find the fact. A similar objection is made to the opinion intimated by the judge, that from the evidence the plaintiff's domicil, at the time of the district meeting, was at his father's. If the evidence left the questions of the plaintiff's domicil and residence open for the consideration of the jury, as questions of fact, I think it would have been proper to submit them rather more distinctly to the jury than was done by the learned judge. Still, I cannot say that the learned judge did, and I do not believe that he intended to withdraw these questions as questions of fact from the jury. And I think that his remarks, to which exception has been taken, cannot fairly be regarded as positive directions to the jury, but may more properly be deemed comments upon the evidence, and the mere expression of his opinion by way of advice to the jury as to such evidence, upon which they were to exercise their judgment. If I am right in giving this character to these remarks of the learned judge, no exception

Crawford v. Wilson.

can be taken to them, as he went no further than the decisions of the supreme court authorized him. (1 *John. Ca.* 250. 14 *Wend.* 111, 116. 12 *Id.* 301, 78, 82. 12 *John.* 517, 518, 519.)

But I am inclined to believe that the facts proved, as to which there is no conflict, justified the opinion expressed by the learned judge, that the plaintiff's domicil and residence was in school district No. 5 in the town of Saratoga Springs, at the time of the school district meeting; and that the mere fact of his entering into a contract to teach a school for the period of four months only in Malta, and going there for the purpose of fulfilling such contract, did not change either his domicil or his residence. If the facts were undisputed, I think the judge would have been justified in instructing the jury that they did not change either the domicil or the residence of the plaintiff. Where evidence is competent, and uncontradicted, and is sufficient to warrant a verdict, the judge may, on such evidence, direct a verdict, instead of submitting the question of the sufficiency of the evidence, to the jury. (*Nichols* v. *Goldsmith,* 7 *Wend.* 160.) But to warrant an unqualified direction to the jury in favor of one party or the other, the evidence must either be undisputed or the preponderance so decided that a verdict against it would be set aside and a new trial granted. (*Rich* v. *Rich,* 16 *Wend.* 663, 676. 1 *John. C.* 250. 6 *Wend.* 436, 438. 5 *Bing.* 354. *Davis* v. *Russell,* per *Gaselee, J.* 2 *Hall, S. C. Rep.* 102.) If the evidence is of a circumstantial character, although undisputed, there is often a conclusion to be drawn by the jury; and in such case, to warrant the direction of the judge, the conclusion should be so plain that a verdict against it would be set aside. But where there is a conclusion of law arising on plain facts, the judge may, and it is indeed his duty to direct a verdict according to such conclusion. (*Per Cowen, J., Rich* v. *Rich,* 16 *Wend.* 676. *Demyre* v. *Souzer,* 6 *Id.* 436.)

Every person must have a domicil somewhere; and he can only have one domicil at one and the same time. Every person has a domicil of origin, which he retains until he acquires another; and the one thus acquired is in like manner retained

Crawford *v.* Wilson.

until he acquires a third domicil. The existing domicil always continues until another is acquired. So by the acquisition of another, the former domicil is relinquished. (*Abington* v. *North Bridgwater*, 23 *Pick.* 170. *Thorndike* v. *City of Boston*, 1 *Met.* 242. *Killmur* v. *Bennett*, 3 *Id.* 199.) The domicil of origin arises from birth or connexions. The domicil of a minor follows that of his father, and remains until he acquires another, which he cannot do until he becomes an adult. (*Andrews* v. *Heriot*, 4 *Cowen*, 516, *note* 2.) A domicil is defined to be the place where a person has fixed his habitation, without any present intention of removing therefrom. (*Putnam* v. *Johnson*, 10 *Mass. Rep.* 488, *per Parker, J.* 1 *Bouvier's L. Dic.* 480.) It is defined by Webster to be a place of permanent residence, either of an individual or a family. Chancellor Kent says the place where a man carries on his established business, or professional occupation, and has a home and permanent residence, is his domicil. (2 *Kent's Com.* 431, *note e* 2d *ed.*) Senator Allen, in the *Matter of Wrigley*, (8 *Wend.* 142,) defines domicil to be "a residence at a particular place, accompanied with positive or presumptive proof of continuing it an unlimited time." A person being at a place is prima facie evidence that he is domiciled there; but it may be explained and the presumption rebutted. (2 *Kent's Com.* 431, *note* (*e.*) 2 *Bos. & Pul.* 229, *note, per Lord Thurlow.*) It may be shown that he was at such place on a visit, or was there on account of his health or business, &c. (2 *Bos. & Pul.* 229, *note.*) To effect a change of domicil there must be intention and act united. The *forum originis*, or domicil of nativity, remains until a subsequent domicil is acquired *animo et facto.* (2 *Kent's Com.* 431, *note e.*) If a party removes from his domicil, with an intention of returning, he does not lose his domicil; as he can have acquired one nowhere else. (1 *Bouvier*, 490.) So if a person leaves the place of his domicil temporarily, or for a particular purpose, and does not take up a permanent residence elsewhere, he does not change his domicil. (*Granby* v. *Amherst*, 7 *Mass.* 5. *Lincoln* v. *Hapgood*, 11 *Id.* 352. *Harvard College* v. *Gore*, 5 *Pick.* 370. *Sears* v. *Bos-*

*ton*, 1 *Metc.* 250.   *Cadwallader* v. *Howell*, 3 *Harrison's N. J. Rep.* 138.   *Wilton* v. *Falmouth*, 3 *Shepley*, 479, 1 *Metc.* 242.)

In the *Matter of Thompson*, (1 *Wend.* 45,) and in *Frost* v. *Brisbin*, (19 *Id.* 13,) a distinction is recognized between domicil and residence.   Domicil, it is said, means something more than residence ; that it includes residence with an intention to remain in a particular place.   (1 *Wend.* 45.)   Thus a foreign minister has not his domicil where he resides.   Domicil is the habitation fixed in any place, with an intention of always staying there, ( *Vattel*, 163, 164,) or at least without any present intention of removing therefrom.   (10 *Mass. Rep.* 488.)   The residence of a foreign minister at the court to which he is accredited, is only a temporary residence.   He is not there *animo manendi*.   The same may be said of the officers, soldiers and seamen, in the army and navy.   They may be said to have their domicil in one place, and their actual residence in another.   But generally residence and domicil mean the same thing.   The place where a man carries on his established business, and has his permanent residence, is his domicil.   Residence is defined in Bouvier, to be the place of one's domicil.   Webster defines it to be the place of abode ; or the act of dwelling or abiding in a place for a continuance of time.   Inhabitance and residence are generally used as synonymous terms.   Inhabitant is defined to be one who has his domicil in a place ; or one who has an actual fixed residence in a place. (1 *Bouv. Law Dic.* 678.)   Webster defines it to be " one who dwells or resides permanently in a place, or who has a fixed residence, as distinguished from an occasional lodger or visitor."   Chancellor Walworth, in the *Matter of Wrigley*, (8 *Wend.* 140,) says, " Inhabitancy and residence do not mean precisely the same thing as domicil, when the latter term is applied to successions to personal estate, but they mean a fixed and permanent abode, or dwelling place for the time being, as contradistinguished from a mere temporary locality of existence."   In *Roosevelt* v. *Kellogg*, (20 *John.* 210,) the supreme court decided that the term inhabitant, in the insolvent act of 1813, signified the same thing as resident.   Woodworth, J. says " a person res-

Crawford *v.* Wilson.

ident is defined to be one dwelling or having his abode in any place ;" an inhabitant," one that resides in a place."

In the *Matter of Fitzgerald*, (2 *Caines*, 317,) it was decided that a person who came into this state on a commercial adventure, without any intent of settling here, was not a resident within the meaning of the act for relief against absconding debtors. In the *Matter of Thompson*, (1 *Wend.* 43,) the court held, in respect to an absent debtor, that residing abroad, engaged in business for a time, whether permanently or temporarily, was a " residing out of the state," within the meaning of the statute. In the *Matter of Wrigley*, (4 *Wend.* 602; 8 *Id.* 134,) it was held that a person remaining temporarily for a month in the cities of New-York and Brooklyn, intending to commence business in Canada, was not an inhabitant or resident within the meaning of the insolvent act of 1813. Savage, C. J. in this case, says that in the matter of *Fitzgerald*, (2 *Caines*, 318,) it was held that a resident within the state was one who had a residence of a permanent and fixed character, not one who had a mere residence of a temporary nature. In *Frost* v. *Brisbin*, (19 *Wend.* 11,) the facts were these : a resident of this state, left the state in May, 1836, and went to Wisconsin, and commenced business there as a merchant, with intent to make it his permanent residence, but left behind his wife and child at board at his former residence in this state. In March 1837, he returned to his former residence on a visit, and remained until May, when he was arrested and held to bail. And it was held that he was not a resident of this state, within the meaning of the act to abolish imprisonment for debt. In that case, Nelson, Ch. J. says, " There must be a settled fixed abode, an intention to remain permanently, at least for a time, for business or other purposes, to constitute a residence within the legal meaning of that term." In *Thorndike* v. *City of Boston*, (1 *Met.* 245,) Shaw, C. J. says, " The questions of residence, inhabitancy, or domicil, although not in all respects precisely the same, they are nearly so, and depend much on the same evidence." In *Cadwallader* v. *Howell*, (3 *Harrison's Rep.* 144,) Dayton J. says, " The word residence, (fixed resi-

Crawford *v.* Wilson.

dence I mean,) is generally used as tantamount to domicil, though I am not prepared to say whether they are or are not in all respects convertible terms."

From the various definitions of the terms residence, inhabitancy, and domicil, and the decisions in regard to them, I think we can deduce the proposition that the terms legal residence or inhabitancy, and domicil mean the same thing. By legal residence, I mean the place of a man's fixed habitation; where his political rights, such as the right of the elective franchise, are to be exercised, and where he is liable to taxation. A person leaving such place of fixed habitation, or abode temporarily, as for a particular purpose, either for business, pleasure, or health, with the intent of returning to the same, as soon as such purpose is accomplished, does not lose his residence or habitancy in such place of abode. The actual residence is not always the legal residence, or inhabitancy of a man. A foreign minister actually resides, and is personally present, at the court to which he is accredited, but his legal residence or inhabitancy, and domicil, are in his own country. His residence at the foreign court is only a temporary residence. He is there for a particular purpose. So soldiers and seamen may be legal residents and inhabitants of a place, although they may have been absent therefrom for years. They do not lose their residence or domicil by following their profession.

Within these principles and decisions, did the plaintiff, by entering into a contract to teach school in Malta for the period of four months, lose his domicil or legal residence in Saratoga Springs? It will be remembered that he only remained in Malta during the four months. At the expiration of that time he left Malta, and took a school in Stillwater. He could not lose his residence and domicil in Saratoga Springs, unless he acquired a residence and domicil in Malta. He could not acquire a residence and domicil in Malta unless he fixed his habitation there for an unlimited time, and without any present intention of removing therefrom; and he must have left Saratoga Springs with an intention to abandon that place as his domicil. The conduct of the plaintiff does not warrant any such conclusion.

Crawford *v.* Wilson.

His contract to teach in Malta was limited to four months. During this period he returned to Saratoga Springs, and acted there as secretary of a school district meeting; and at the end of the four months he left Malta permanently. These acts of the plaintiff show, incontestibly, that he did not intend, when he went to Malta, to take up his permanent residence there, and to abandon his domicil at Saratoga Springs. In questions of domicil, evidence of a party's conduct after, as well as previous to a particular day, may be received to ascertain his intention on such day. (*Richmond* v. *Vassalborough*, 5 *Greenl. Rep.* 396.) The residence of the plaintiff, at Malta, must be deemed one of a temporary character and for a particular purpose. He evidently did not go there *animo manendi;* with any intention of abiding there for an indefinite period. Although his actual residence may have been at Malta during the four months, his legal residence and domicil continued at Saratoga Springs.

I therefore have come to the conclusion that upon the plain undisputed facts of the case, the plaintiff's domicil and legal residence, was in school district No. 5 in the town of Saratoga Springs, at the time of the school district meeting, on the 23d of January, 1845, and that therefore the charge of the judge on the subject of such domicil and residence was entirely correct. The plaintiff's domicil of nativity, and his legal residence, having been shown to be or to have been in Saratoga Springs, it was incumbent upon the defendant to prove a change of such domicil and residence to Malta. I do not think that the evidence on the subject of such change of domicil and residence, was sufficient to entitle the defendant to have that question submitted to the jury as a question of fact.

It was suggested by the defendant's counsel on the argument of this case, that the plaintiff died on the 24th of Dec. 1846, and he contended that by the plaintiff's death the suit abated; and as more than two terms had elapsed since the verdict, and as the cause of action did not survive to the personal representatives of the plaintiff, no judgment could be entered upon the verdict, under the provisions of the revised statutes.

(2 *R. S.* 387, § 2, 4.) The entry of the judgment in this case was delayed by the bill of exceptions of the defendant. And in every such case the statute has no application. Whenever a party is delayed by the act of the court, the court upon common law principles, without regard to the lapse of time, allow the judgment to be entered up, as of a term when the party was alive. A delay arising from the act of the court is never allowed to prejudice the party. (18 *Wend.* 543. 12 *Id.* 245. 4 *Cowen,* 423. 1 *John. Cas.* 410. 2 *Tidd's Pr.* 965.)

The motion for a new trial must be denied; and the judgment must be entered nunc pro tunc as of a time during the life of the plaintiff.

---

SAME TERM. *Before the same Justices.*