DE AGREDA a. MANTEL.—MANTEL a. GUYNET.

*New York Superior Court; Special Term, December,* 1854.
*(Original and cross actions).*

JUDGMENT UPON APPEAL.—DOCKETING.—PROCEDURE IN CASE OF
DEATH OF PARTY.—LIABILITY OF REPRESENTATIVES.

The proper form of judgment of affirmance upon appeal from the special to the
general term, defined.
Application to correct the form of a judgment of the general term may be made at
special term.
The test of the right to docket a judgment is the right to issue execution upon it
immediately.
Judgment upon appeal cannot be rendered as of a day subsequent to the death of a
party appellant or respondent.
But it may be rendered as of a day prior to his decease.
Except that a day cannot be selected for this purpose, upon which the court of
appeal could not have been in session, or the appeal could not have been heard.
Where there is a joint contract or liability and one party is dead, the other only
should be sued.
Where the contract or liability is joint and several, the representatives of the de-
ceased are necessary parties.
The several modes by which the representatives of a deceased party in interest to
an obligation of the latter class may be made parties to a suit upon it pending at
the time of his death—pointed out.
The personal representatives may be sued as soon as they have taken out letters.
*It seems,* that heirs may in such a case be made parties immediately on the decease
of their ancestor, for the mere purpose of enabling them to look to the title of real
estate, and protect eventual interests which they might have in the personalty.

Order to show cause why plaintiff in the cross action, who
was defendant in the original action, should not have certain
relief.

*E. H. Owen* supported the order.

*J. B. Stevens* showed cause.

HOFFMAN, J.—The application in this case is attended with
considerable difficulty. The questions arise under an order for
John B. Mantel to show cause why the judgment or decree
settled on the 12th day of July, 1854, should not be filed with

the clerk of the court, and why the judgment on the affirmance of such judgment should not be settled by one of the justices, and so amended and corrected as to confirm the same to the decision of this court on the determination of the appeal; and why the docket of such original judgment and also the docket of such judgment of affirmance in the clerk's office of the city of New York should not be vacated; and why the heirs or representatives of the said George Guynet should not be made parties to these actions; and why all proceedings in these actions on the part of the said John B. Mantel should not be stayed until the said heirs and representatives of the said George Guynet are brought in as parties thereto; or why the said Joseph S. de Agreda should not have such other or further relief as he may be entitled to.

All proceedings in the interim were stayed by this order to show cause.

The facts out of which the questions arise are as follows:

Joseph S. de Agreda and George Guynet, plaintiffs in the first action, were purchasers from Mantel of the premises in question, and sought a recession of the contract of sale. Mantel, plaintiff in the second or cross action, sought to have it enforced. The cause was sent to a referee to hear and decide.

A judgment was entered on the 12th day of July, 1854, founded upon the report of the referee. It was entered in both suits, and adjudged that the contract of sale and purchase mentioned in the pleadings was binding, and should be carried into effect, and that therefore the relief asked in the complaint in the original action (the first above mentioned) should be dismissed.

The judgment entered upon the report of the referee was in substance as follows:

Guynet and De Agreda were ordered to accept the deed of the premises, to pay the sum of $15,054 94, and to execute a mortgage for the balance of the purchase money and pay the costs within fifteen days.

The decree then proceeded, that in case of default of such performance, then the parties were to pay to Mantel the said sum of $15,000, and also the further sum of $30,000, being the balance of the said purchase money, which by the contract

was to have been secured by such bond and mortgage, with interest from the 2d day of May, 1853, to the date of the decision, amounting to the sum of $31,890, which several sums amount in the aggregate to the sum of $49,044 95, with interest thereon and costs, and in default thereof that the premises mentioned in the contract be sold at the Merchants' Exchange under the direction of, &c.

Then follow provisions as to the mode of making and consummating such sale—directions for the payment of the said sum of money out of the proceeds—and deposit of the surplus, if any, with the clerk of the court, and also if there should be a deficiency, that the same should be specified in the report of sale, and Mantel have execution therefor according to the practice of the court.

In November, 1854, the judgment was affirmed by the general term, and the judgment then entered was in substance as follows: That the causes were brought to a hearing as original and cross actions upon the appeal of the said George Guynet and Joseph S. de Agreda, taken to the general term from the decree made on the 12th day of July, 1854, whereby it was ordered and adjudged, among other things, that the respondent recover against the appellants the sum of $49,054 95, with interest from the 10th of June, 1854, together with costs and allowance, taxed and adjusted at the sum of $490 05. That after hearing counsel, &c., it was ordered and adjudged that the judgment and decree so appealed from, be in all respects affirmed with costs; and that the appellants do pay respondent the sum of $51,135, being the aggregate amount of the aforesaid several sums with interest thereon to the date of the decree, together with costs of the respondent upon the appeal, adjusted at $122 07, amounting in the whole to the sum of $51,251 14, and that the respondents have execution therefor according to law.

Each of these judgments has been docketed in the clerk's office of the county of New York, the one on the 12th of July, 1854, for $49,535; the other on the 24th of November of that year, for $51,259 14.

Guynet, one of the plaintiffs in the original, and a defendant in the cross action, was on board the Arctic, which was

destroyed on the 27th of September, 1854, and that date may, for the present questions, be taken as the day of his death.

The judgment entered on the report of the referee was entered on the 14th of July, and an appeal was taken on behalf of both defendants on the 19th of that month. On the 8th of August an order was made staying all proceedings on the part of Mantel, upon Guynet and De Agreda giving security in the sum of $10,000. The appeal was noticed for hearing for October term, 1854, which commenced on the 2d of that month. It was again noticed for the November term, and was decided, and judgment entered on the 18th of that month.

No suggestion was made of the probable death of Guynet until the twenty-second (22) of November, when his former attorney gave notice of the fact of his having been in the Arctic, and that he was presumed to be dead.

Upon these facts several important, and to some extent novel questions have arisen.

1st. As to the first branch of the application, it is shown that the judgment was duly filed, and the attorney of De Agreda was in this instance mistaken.

2d. I consider that the form of the judgment of affirmance at the general term was incorrect. Although an execution would no doubt be restrained to the single amount due, yet there appears upon the record two judgments for the same sum, one a little increased by interest and costs, and this I think is at least irregular. The objection to it strikingly appears, when we notice that here are two docketed judgments for double the actual debt, embarrassing the record and prejudicing the party.

The course pointed out by Justice Barculo in Eno v. Crooke (6 *How. Pr. R.*, 402), is, I apprehend, the regular practice. He shows the distinction between an appeal from an inferior to a superior tribunal, and one from the special to the general term of the same court. In the latter case it is simply declared that the court is satisfied to let the judgment stand.

The judgment pronounced at general term should therefore have been merely this: That the causes having been brought to a hearing as original and cross actions upon the appeal of the said George Guynet and Joseph S. de Agreda to the gene-

ral term of this court taken from the judgment made and entered therein on the 12th day of July, 1854, thereupon on hearing of counsel, &c. It is ordered and adjudged that such appeal be dismissed, and such judgment be affirmed with costs, and that the said John B. Mantel, the respondent, do recover and have execution for such costs when adjusted by the clerk, and inserted in the entry of this judgment.

It follows from this view, that the second docket of the judgment, as to every thing at any rate, except the costs, must be vacated. Whether it can stand for that sum will be afterwards noticed.

Thus far I see little difficulty. The original judgment was duly entered. The judgment of affirmance should be amended, and the docket in whole or in part vacated.

The application for this amendment can be made at the special as well as the general term. (Ayres *v.* Colville, 9 *How. Pr. R.*, 573 ; Corning *v.* Powers, *Ibid.*, 54).

3d. Upon the next and a material question, I am of opinion that such a judgment as has been here made cannot be docketed at all. There can be no docket except for the deficiency, when that shall be ascertained.

Before the Revised Statutes, a judgment was a lien upon lands from the time of its entry, although it did not affect them as against purchasers, until a docket (1 *Rev. Stats.*, p. 501), and decrees in the court of chancery affected personal property, from the time of levy upon an execution, and real estate from seizure under the same. The Revised Statutes provided that a docket should affect lands under decrees from its date. (2 *Rev. Stats.*, 360 ; Norton *v.* Talmadge, 3 *Edw. R.*, 310).

The docket was at first a mere alphabetical record of judgments, made by the clerk of the court. By the statute of 1840, (*ch.* 386, § 25), no judgment or decree could be a lien upon lands, unless it was docketed in the office of the clerk of the county in which the lands were situated. Assistant Vice-Chancellor Sandford held, that under this act, lands could still be sold by execution out of this court, where they were situated in the county of New York, although the judgment was not docketed. (Wheeler *v.* Hemans, 3 *Sand. C. R.*, 597). As to personal property no docket was ever necessary.

De Agreda *a.* Mantel.—Mantel *a.* Guynet.

It deserves consideration, however, whether an execution can be issued under the Code, even as to personal property, unless the judgment is docketed. The sections 283 and 287, taken together, provide, that writs of execution for the enforcement of a judgment, are to be issued as prescribed by the title ; and that an execution against the property must be issued to the sheriff of the county when the judgment is docketed. To what sheriff can it be issued if there is no docket in any county ?

In Stoutenbergh *v.* Vandenbergh, (7 *How. Pr. R.*, 233), the court consider, that by the true construction of the Code, a docket is in all cases necessary.

The 282d section of the Code provides, that upon filing a judgment roll upon a judgment *directing in whole or in part the payment of money*, it may be docketed with the clerk of the county where it was rendered, and in any other county, upon filing a transcript, &c.

The second subdivision of the 16th section of the Revised Statutes (2 *Rev. Stats.*, 361), shows, that a docket could only be had when a decree is for a fixed amount of debt, damages, costs, or other sum of money.

In the cases of Crewley *v.* Graham, (8 *Paige*, 480), and The Bank of Rochester *v.* Emerson, (10 *Paige*, 116), the practice of inserting a direction to pay a deficiency, and that the party have execution in mortgage cases, is recognized ; but also that no execution could issue until report and confirmation.

In Cobb *v.* Thornton, (8 *How. Pr. R.*, 66), Justice Marvin held, that the Revised Statutes respecting the foreclosure of mortgages were still in force. He refers to the preceding cases, and to the rule, that although a conditional provision for payment of the deficiency is inserted in the decree, no execution can issue until the sale settles the amount of the deficiency and a report has been made.

It appears to me, that a test of a right to docket a judgment, is a right to issue an execution upon it immediately. None can be issued in this case until the sale has taken place. In the interim the plaintiff Mantel has the security of the property, and that of the undertaking given upon the appeal.

4th. The next question relates to the abatement of the action.

The cases which bear upon this subject are, Rogers *v.* Paterson, (4 *Paige,* 409), The Bank of the United States *v.* Weiserger, (2 *Peters,* 481), and Vroom *v.* Ditmas, (5 *Paige,* 528), and they settled, that where an appeal had been taken and the complainant died after it was in readiness for hearing, but before argument, the order upon the appeal might be entered *nunc pro tunc* as of a day previous to the death. In Rogers *v.* Paterson, the decree in the court of errors was made and dated as of a day after the party's death, and was considered to be valid by the chancellor, he adding, however, that if it was error, the court above could alone correct it. See also the case of Bogardus *v.* Trinity Church, 28th October, 1833, (1 *Hoffman's Ch. Pr.,* 390).

The chancellor in Rogers *v.* Paterson cites however much authority to prove that it is not essential to revive a cause in the Court of Errors where death occurs after an appeal or writ of error is perfected. And in Hastings *v.* McKinley (8 *How. Pr. R.,* 175), the Court of Appeals appears to approve of this practice. In Miller *v.* Green (7 *How. Pr. R.,* 159), Justice Harris treats it as settled practice on an appeal from the special to the general term of the Supreme Court; and in that case the party, appellant and defendant, died before argument of the appeal, but after it was perfected. The case is precisely like the present. The judgment was ordered to be entered as of a day anterior to his death.

See also as to the course in the House of Lords, Thorpe *v.* Malingley (1 *Phillips Rep.,* 200).

So Justice Wells in Holmes *v.* Honie (8 *How. Pr. R.,* 384), observes, that it was never regular either by common law or statute to enter a judgment against a person after his death; and he notices the practice of entering where judgment *nisi* had been had, and a final judgment had been delayed by a case or bill of exceptions; but that in such and similar cases the judgment was ordered to be entered of a day when the party was living, so that the record would show that fact. See also Crawford *v.* Wilson (4 *Barb.,* 523).

Such a judgment then might in ordinary cases be entered

upon an appeal like the present. But in this case a great diffi-culty arises from special circumstances.

The Code authorizes the court to appoint general and special terms (§ 34.) The court appointed such by rule for the first Monday of every month, except July, August, and September; and ordered that at the conclusion of June term the court would appoint general terms, for the hearing of appeals from orders made on non-enumerated motions only, to be held during the vacation. This was done in June last, and a general term appointed for the 31st of August and the 30th of September. The 31st of August was then the only general term, after the appeal in this case, and before the party's death. But the appeal could not have been then heard except by consent.

Hence, if the position cannot be supported, that the judg-ment on the appeal was not erroneous, although entered on the 18th of November after the party's death, (that to remain as its actual date), such judgment was irregular, and the case as to Guynet must be treated as it stood on the 8th day of August when the appeal was perfected.

I have concluded that this would be irregular, if not void. In a tribunal of ultimate resort, on the final decision of a cause, it may be warrantable. But the theory of an appeal from a judgment at special term (and this is the same) to the general term, is a rehearing in the same court before other or additional judges. And then it would appear that judgment is given by the court as of a day when it could not have been in session to make such a judgment.

It remains to consider what on this basis are the rights of the parties.

The Code in terms declares that no action shall abate by the death, marriage, or other disability of a party, if the cause of action survive or continue (§121). In effect this is an adoption of the chancery interpretation of abatement—that it is merely an interruption of the suit, suspending proceedings in whole or in part, according to the circumstances of each case, and the position of the deceased party on the record. (Hoxie *v.* Carr, *Sumner's Rep.*, 173).

The case must then be taken up, as it stood after the appeal

was perfected, and as if no affirmance had been had at the general term as to Guynet and his rights.

The counsel for the plaintiff Mantel here raises the point, that no proceedings by way of revivor or otherwise (except a suggestion on the record of the death) are requisite—that the whole cause of action has survived as against De Agreda, and that the judgment may be fully executed by a sale of the whole property, and all the interests of each party therein, without any regard to the heirs or executors of Guynet.

Let the case be considered just as if the plaintiff Mantel had brought his action to enforce the contract after Guynet's death.    Who ought then to have been made parties?

The following authorities establish that in general where there is a joint contract or liability, and one party is dead, the survivor alone should be sued.    There are some exceptions to this rule under special circumstances: (Lawrence v. The Trustees of Leake, &c., 2 *Denio*, 580 ; Garret v. Shuster, 1 *Wendell*, 148 ; Brewster v. Patterson, 4 *Edwards*, 466.    And in the Court of Appeals, Parker v. Jackson, 16 *Barbour*, 41 ; Higgins v. Rockwell, 2 *Duer*, 651 ; Voorhies v. Baxter, 1 *Abbotts' Pr. R.*, 43).

It deserves notice as to the three last cases, being since the Code, that the Codifiers supposed they had changed the rule in accordance with the English authorities.    See them cited in the assistant vice-chancellor's opinion, (2 *Denio*, 580).    In their observations upon sections 97 and 98, (now 117 and 118), they say, that these will enable a surviving partner and the representative of a deceased partner to sue together, whenever desirable, and will enable a plaintiff to exhaust in one suit his remedies against a surviving partner, and the representatives of a deceased partner.    The last clause of the 118th section, beginning with the words, " or who is a necessary party," was added in 1849.    The addition does not certainly weaken the language which the Codifiers supposed covered the case.

But it appears to me that there is a sufficient ground to distinguish the present case from those cited.    In those cases, the entire legal right to the property of the partnership survives. The fund in the survivor's hands is the first fund to be applied to the discharge of the debt; but here there is no such ele-

ment. The purchase does not appear to have been made on joint account for any partnership or joint purpose. These parties would be tenants in common if the purchase had been consummated.

It may be useful to advert to some acknowledged rules of the court of chancery, tending to illustrate this question.

Thus, on the death of a vendor, both his devisees or heirs, and his personal representatives, are necessary parties to a bill for performance, the former to make a conveyance and the latter to give a discharge of the purchase-money, (Townsend *v.* Champermorne, 9 *Price*, 130); and so the converse of the rule is true. If the vendee dies, the personal representative must be brought in, as he is to pay the money, and the devisee or heir, as he is to receive the conveyance and look to the title. (*Ibid.* and see Champion *v.* Brown, 6 *John. Ch. Rep.*, 398).

I may observe here, that the cases of Merserau *v.* Ryerss, 3 *Comstock*, 261, and Stuart *v.* Kissam, 11 *Barbour*, 282, do not appear to affect the present question; they relate to the general creditors of an estate seeking to unite the representatives of the real and personal property in one action.

De Agreda and Guynet, under this agreement and the principal of a court of equity, were equitable tenants in common of this property. In relation to their own action then, the case of Fallowes *v.* Williamson, 11 *Vesey*, 306, would apply. There the representatives of one tenant in common and a co-plaintiff filed a bill of survivor, and were obliged to make the co-plaintiff a party, as well as the defendant. And in this point of view, while it may be said, that their contract to pay has the form of a joint contract, their interest and right in the property to be received, and the subject of the suit, is joint and several. Another and unquestioned series of cases establish, that the survivor and the representatives may then be joined. (Pierson *v.* Tester, 3 *Swainston*, 139, *n.* ; Augerstein *v.* Clarke, *Ibid.*, 147, *n.* ; Haywood *v.* Overs, 6 *Mad. Rep.*, 113 ; Madox *v.* Jackson, 3 *Atkins.*, 406 ; Bland *v.* Winter, 1 *S. & St.*, 246).

It results from the following observations, that the judgment cannot be carried into effect, so as to sell the whole property,

and to recover the whole if any, deficiency, until the representatives of Guynet are before the court.

The representatives of Guynet may, of course, make themselves parties to each suit, by a motion, under the 121st section of the Code. If they neglect it, then the remaining plaintiff may, under the Code, or at any rate under the Revised Statutes, make the representatives of Guynet defendants in the original suit when eighty days have expired from his death. (2 *Rev. Stat.*, 185, § 117). And if De Agreda neglect it, then Mantel can petition to have the suit revived in their names, or that the action be dismissed so far as their interests are concerned. (5 *ibid.*, § 118; 5 *Sandford's Rep.*, *S. Ct.*, 648). Besides, after a decree, a defendant can revive a suit without the aid of the statutes. (Lorillard *v.* Dios, 9 *Paige*, 394, and cases).

Again, as plaintiff in the cross-action, Mantel has a course open to him under the Revised Statutes, (§ 108, 109, and subsequent sections), to bring in the representatives of the defendant. (See 1 *Hoffman's Practice*, 373). It is also the rule, that a bill of revivor might be resorted to as well as the petition under the statute. (2 *Paige*, 380; Douglas *v.* Sherman; Humphreys *v.* Holls, *Jacobs' Rep.*, p. 73).

The personal representatives, as before observed, would be necessary parties, and they may be sued as soon as they have taken out letters probate or of administration. (Butts *v.* Genune, 5 *Paige*, 258). Although the heirs cannot be sued until the expiration of three years, for payment of a debt, out of lands descended, yet I do not think this would form an objection to making them parties, solely with a view that they may look to the title, and aid in protecting any eventual rights they might have in the personal estate, no decree for any deficiency being made against them.

It may be that the course of proceeding under the 376th and subsequent section of the Code, may be pursued in this case, and the personal representatives of Guynet be brought in to have the judgment enforced against the assets. The heirs might perhaps be made parties to the summons, not to have their property descended then made liable, but to look to the title and conveyance.

There remains one important question, viz., whether the 108th section of the Statute in connection with the 122d section of the Code, does not enable Mantel to proceed and execute the judgment, so far as *De Agreda's* interests are concerned.

The 108th section of the statute is, that where one or more of the complainants or defendants shall die, and the cause of action not survive, the suit shall abate only as to the person or persons so dying, and the surviving parties may proceed without reviving the suit.

The 122d section of the Code, provides that the court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights, but when a complete determination of the controversy cannot be had without the presence of other parties, the court must cause them to be brought in.

And by the 274th section, in an action against several defendants, the court may in its discretion, render judgment against one, or more of them, leaving the action to proceed against the others whenever a several judgment may be proper. If a several judgment could be taken for a sale of a moiety of the land, and a recovery of a moiety of the deficiency, a separate execution can issue upon the judgment already obtained, though in form against both.

In Leggett *v.* Dubois, (2 *Paige*, 212), the bill was for the specific performance of an agreement to convey land, brought against the seller and his trustee. The land had been conveyed to other defendants with notice as alleged. Sellon died without answering. The chancellor ordered the complainant to proceed within sixty days to revive the suit against the legal representatives of Sellon, or consent to proceed against the surviving defendants only, or the injunction should be dissolved. In commenting upon the 108th section, he observes, that it provides for cases, where some of the parties survive and the rights of the parties dying do not survive to them, but some other person becomes vested with their rights and interests, or is subject to the liability of those who are dead. In such a case the complainant may proceed without making such persons parties, provided a decree can be made between

the surviving parties without bringing such persons before the court. The decree in such case will not affect those in whom the rights of the deceased parties have become vested.

In Carey v. Davies, (1 *Hogan's Rep.* 16), the master of the rolls said, " The death of a party abates a suit only as to his interest. To this as a general rule I perfectly agree, but with this addition, that although it abates the suit only as to his interest, yet it more or less renders the suit defective, in proportion as the interest of the party dying, was connected with the other rights in litigation in the cause.

I have no doubt of the right of De Agreda, the co-defendant, to move in this case for the correction of the decree, and to vacate the docket. If any prejudice could arise to the rights of those who may represent Guynet, it could be guarded against in the order, but this cannot be.

The result of my examination of this complicated case is—

That the judgment of affirmance by the general term must be vacated as to the party George Guynet, and must be amended and entered as to the party De Agreda in the manner before stated, and declared to be and remain in full force as to him.

That both dockets of the judgment made at the clerk's office in New York be vacated and discharged without prejudice to any application on the part of Mantel to increase the security given on the appeal so far as relates to the said De Agreda.

That the proceedings to execute the judgment as against the estate and interests of the said Guynet in the premises or otherwise, be stayed until his representatives be brought before the court according to its practice.

That the said Mantel be at liberty to execute such judgment by a sale, in the manner therein directed, of all the undivided share, right, title and interest of the said De Agreda in and to the premises mentioned in such judgment, and to proceed against him for the one-half part of any deficiency which may be ascertained upon such sale.

That neither party have costs as against the other of the present application.