In the matter of ALEXANDER THOMPSON.

THIS case came before the court on a certiorari to the common pleas of New-York, to remove certain proceedings had under the 23d section of the act relative to absconding and absent debtors, (1 *R. L.* 157.) An attachment was issued on 13th April, 1826, against the property of Thompson, on a petition duly presented and verified, stating his indebtedness, and that he resided out of this state. Before the appointment of trustees, on an application in behalf of Thompson, the proceedings were certified into the common pleas, where proof was taken as to the residence of the debtor. The court decided, that at the time of the issuing of the attachment, Thompson was *not* an absent debtor, within the contemplation of the act; and allowed a supersedeas to the attachment.

An attachment may issue against the estate of a debtor residing abroad, whether he is absent permanently or temporarily. The right to sue out an attachment, does not depend upon a change of *domicil* of the debtor.

From the return to the certiorari, the following facts appeared: Alexander Thompson is a native of Scotland. He came to New-York in 1801, and commenced the commission business. In 1807, he was naturalized. Since his first arrival in this country, he has made ten voyages to Scotland, at different intervals of time. He usually remained but a few weeks abroad, except during the last war, when he continued abroad one year. In each of the two years immediately preceding 1824, he made an annual voyage to Scotland. On the 16th June, 1824, he went for the last time to Scotland, since when he has not returned. He had two partners in New-York, his son and nephew. His son was taken into part-

NEW-YORK, nership on the first of May, 1824; his nephew had been a
May, 1828. partner since 1822. The business of the firm was conducted
In the matter in the name of *Alexander Thompson*, which name was over
of Thompson. the door of the store in 1821, and still continues. When he
left New-York, in 1824, he went to Europe, partly on the
business of the firm, and partly for pleasure. In 1824 and
1825, consignments of vessels and cargoes of great value
were made to him, by his partners remaining in this country,
of which he took charge in Scotland, and on which he made
advances. Remittances of money also were made to him,
to a large amount. Whilst there, he procured return freights
for vessels to this country. He had a counting room in the
store of a mercantile friend in Glasgow, where he transacted
his business, and kept a clerk in his employment. From
1816 to 1824, he had a partner or agent, who attended to
his business in Scotland. He lived at board in Glasgow,
as he had done whilst in New-York, having no family but his
son. He frequently expressed his intention to return to
New-York; but no particular time was fixed on for his re-
turn. In 1825, his partners made a consignment to him of
the value of £50,000 sterling : his son accompanied the
same, to take charge of the property, under the expectation
that his father was on his way home. In 1825, Alexander
Thompson was declared a bankrupt in Scotland, and all his
property there sequestrated. On the 11th March, 1826, he
gave an order on his partners here for the delivery to the
trustee appointed under the proceedings in bankruptcy, of all
books, &c. relating to the business in which he had been in-
terested, from 1814 to 1822.

The cause was submitted to the court on briefs.

*A. Floyd,* for creditor.

*D. Robert,* for debtor.

*By the Court,* SAVAGE, Ch. J. Judge Irving,* in a
learned and elaborate opinion, has discussed the ques-
tion, whether, by the circumstances of this case, the *dom-*

---

* The First Judge of the New-York common pleas.

NEW-YORK.
May, 1828.

In the matter
of Thompson.

*cil* of Thompson has been changed; and has shown that it was not. " The domicil is the habitation, fixed in any place, with an intention of always staying there." (*Vattel*, 163.) " In this sense, he who stops even for a long time in a place, for the management of his affairs, has only a simple habitation there, but has no domicil. Thus, the envoy of a foreign prince has not his domicil at the court where he resides." (*Ibid.* 164.) The argument of the judge proceeds on the ground that if the domicil of the debtor be in this state, he is not liable to be proceeded against as an absent debtor; and having come to the conclusion that the domicil of Alexander Thompson is in New-York, he orders a *supersedeas.*

The counsel for the attaching creditor takes a distinction between *domicil* and *residence.* Domicil includes residence with an intention to remain in a particular place. He contends that absence without the state, whether the debtor have his *domicil,* or a mere *residence* there, is equally within the object of our act, which authorizes an attachment against the property of the absent debtor.

It appears to me, the object of the statute was to authorize creditors to prosecute for their debts when their debtors were abroad; and whether their absence from this state is permanent or temporary, whether it is voluntary or involuntary, the reason for giving this remedy to the creditor is the same. The 23d section gives the remedy, and is as follows: " That the estate, real and personal, of every debtor who *resides* out of this state, and is indebted within it, shall be liable to be attached and sold for the payment of his debts, in like manner in all respects, as nearly as may be, as the estates of debtors residing within this state." The question, I think, is, where was his actual *residence,* not his *domicil.* And whether his national character was changed or not, does not seem to me to affect the true question.

The act is intended to give a remedy to creditors, whose debtors cannot be served with process. If the debtor absconds or secretes himself, then an attachment issues. If he notoriously resides abroad, then the attachment issues. But if he goes openly to another state or country, and remains

there doing business, but intending to return when his con-venience will permit, he is not, as his counsel contends, an absent debtor, and his property cannot be touched. He may become a bankrupt abroad, as has Alexander Thompson ; his property may be taken by his partners, and used by them, or transferred to his foreign creditors, as is attempted in this case ; and the creditor here may stand by and acknowledge and regret the insufficiency of our laws, but the property cannot be touched. Surely the legislature never intended such a state of things. They have provided that a person confined in the state prison for life, may be proceeded against as an absconding debtor. Such a debtor has, in truth, not absconded, but he is out of the reach of the process of law, and therefore the legislature has provided that his property shall be liable to the payment of his debts.

The reason why this remedy is given against the property of debtors resident abroad, is equally applicable, whether the debtor is absent permanently or temporarily. No length of residence, without the intention of remaining, constitutes *domicil.* A debtor, therefore, by residing abroad, without declaring an intention to remain, might prevent his creditors from ever collecting their debts. In my judgment, the present case comes not only within the spirit of the act, but also within its terms.

The order of the judge awarding a *supersedeas,* should be reversed.