THE PRESIDENT, DIRECTORS AND COMPANY OF THE CITY BANK OF NEW YORK v. EDWARD MERRIT and GILBERT MERRIT.

The affidavit required by the act respecting attachments, is not conclusive. There is no provision in that act, which, like the practice act in regard to affidavits for bail, requires the court to "take the fact as sworn to, without going into the merits."

An attachment will be quashed, if it appear to the court that the defendant was at the time, a resident of this state. An actual residence is the predicament contemplated by the tatute, and no distinction is made between a temporary and a permanent character, between a residence for a summer, or for life.

An attachment is an extraordinary, not an ordinary writ. To use it, when the debtor is within the reach of ordinary process, is wholly inconsistent with the spirit, and design of this mode of procedure. It is only when the creditor cannot employ the latter, that he is permitted to resort to the former.

---

A writ of attachment was issued out of the Court of Common Pleas of the county of Bergen, upon an affidavit made by the cashier of the City Bank of New York against Edward Merrit and Gilbert Merrit, and executed on the real estate of Gilbert Merrit. At the term to which the writ was returned, and before any other proceeding was had, a rule was obtained to shew cause why the writ should not be set aside and quashed as having been unduly and improvidently issued. Testimony

was produced before the Court of Common Pleas by affidavits, and also by the examination of witnesses in open court. Upon the argument of the rule, the writ of attachment was ordered to be set aside and quashed. This order of the Court of Common Pleas was removed into this court by certiorari.

*A. Armstrong* and *Hornblower* for plaintiffs in certiorari.

*Dodd* for the defendant in certiorari.

EWING, C. J. Upon an affidavit made by the cashier of the City Bank of New York, of the indebtedness of Edward Merrit and Gilbert Merrit to that institution, and that neither of them was, to his knowledge or belief, resident at the time in the State of New Jersey, a writ of foreign attachment was in sued out of the Court of Common Pleas, of the county of Bergen, whereby certain real estate of Gilbert Merrit, situate in that county, was attached. At the ensuing term, a rule was granted by the court calling on the plaintiffs to shew cause why the writ should not be quashed. Affidavits on the part of Merrit, and counter affidavits on the part of the plaintiffs having been read, the court made absolute the rule and set aside the attachment. Against this order of the court, the plaintiffs seek relief here by certiorari, and insist, 1st, that the affidavit on which the writ of attachment issued, is conclusive, and the allegation therein made of the non-residence of the defendant,s is not examinable or controvertible; and 2d, that if examinable it was not impugned but sustained by the affidavits which were read on the hearing of the rule to show cause.

In the first place, Is the affidavit conclusive? There is no provision in the act respecting attachments, which, like the practice act in regard to affidavits for bail, requires the court to " take the fact as sworn to, without going into the merits." Nor is there any sound principle to extend the rule from one case to the other. The plaintiff or his agent may, from wrong information or other causes, very honestly and excusably fall into error concerning the absconding or the residence of the debtor; but the consequences would be very pernicious, if the error is irremediable, if the debtor is irrecoverably fixed by it. and his property wrested from him by force of the attachment. It has been repeatedly held that the affidavit is not conclusive,

In *Branson* v. *Shinn,* at November term, 1828, a domestic attachment was quashed, where the defendant had not, as alleged in the affidavit, absconded from his creditors, but had, as was shown, left his place of abode for a time and for a lawful purpose. I do not understand Justice Pennington to have expressed a contrary opinion in *Lummis* v. *Boon,* 2 *Penn,* 737. He merely suggests a doubt. " I am not satisfied," says he, " that if this oath was false that it would destroy the attachment." The point now under examination was not expressly involved in the case then before the court.

2. If then the matter was open for investigation under the rule to show cause, was the affidavit counteracted? Was it satisfactorily shown that the attachment was unduly issued? Did it sufficiently appear that the case was not such as to warrant the use of the writ?

Gilbert Merrit, in and for some time before July, 1830, occupied a house in the City of New York, which he held under rent for a year. He owned a house and small farm in Secaucus, in the county of Bergen. The farm was wrought by a tenant, on shares. He held rooms in the house where he had left part of his furniture, expecting to return there and reside in the warm season. On the 31st of July, 1830, he shut up his house in New York, took sundry articles of furniture and moved with his family to his house at Secaucus, where they remained from two to three weeks, as one witness says, or as is said by another, sixteen or seventeen days occupying his own apartments and using his own furniture. He was, himself, frequently absent, perhaps more than half the time, at different places, but was " open in all his movements, going, staying, and returning "—wheresoever his business called him, openly and publicly." His object in going to Secaucus, was to avoid the heat of the City of New York, during the warm weather. He would have remained longer but for the sickness of one of his children, which induced him to remove back to New York, to be near his family physician. These matters were shown by two affidavits which were produced on his behalf in the Court of Common Pleas. The facts set forth in the counter affidavits, do not contradict them nor materially vary the case they present. Two of the plaintiffs' witnesses understood from him at

different times, in the course of the summer, that he resided in New York, but neither of them specifies the time now in question, and one of them expressly excludes it. He might too, as is testified, have served on the 2d of August as chairman of a political meeting, although they might not have been disposed knowingly to call him to that service unless a resident in the ward. Nor is his retention of his house in the city and a portion of his furniture there, inconsistent with the representation contained in the affidavits on his part.

On the 2d of August, the affidavit for the attachment was made and filed. The writ was delivered to the sheriff on the 11th and executed on the 12th day of the same month; consequently, during the period he remained with his family in New Jersey, after his removal from, and before his return to, the city of New York.

It seems to me then, that the Court of Common Pleas was right in the opinion that he was, at the time, a resident of this state within the meaning of the attachment act. The great purposes of that act are, by seizing the property of a debtor, to compel his appearance to answer the demand of the plaintiff, when from non residence or flight, he is beyond the process of our judicial tribunals; and on his failure of appearance, to apply such property to the just end of satisfying his debts. An attachment is an extraordinary, not an ordinary writ. To use it, when the debtor is within the reach of ordinary process, is wholly inconsistent with the spirit and design of this mode of procedure. It is only when the creditor cannot employ the latter, that he is permitted to resort to the former. An actual residence is the predicament contemplated by the statute, and no distinction is made between a temporary and a permanent character, between a residence for a summer or for life. In common language, it is not more usual than correct to say, a person resides in the city during the winter and in the country during the summer.

In the present case, there seems to have been no actual or legal impediment to the use and service of the ordinary process; of a capias, by the arrest of Merrit, who, as the witness testified, was open and public in his movements, or of a summons by the

leaving of a copy at his dwelling-house or place of abode at Secaucus.

We can expect but little light on our present enquiry from the law or practice of the other states, since, all depending on statutory regulations, the one can be no guide for the other, unless we previously ascertain that the legislative provisions are the same. The case of *Alexander* v. *Thompson*, 1 *Wend.* 43, is worthy of attention. The statute of New York enacted "that the real and personal estate of every debtor who *resides* out of this state and is indebted within it, shall be liable to be attached and sold for the payment of his debts." The court recognized a distinction between domicil and actual residence, the former being a residence with intention to remain; held that the act was intended to give a remedy to creditors, whose debtors could not be served with process; and decided that an attachment might issue against the estate of a debtor notoriously residing abroad, whether he was absent permanently or temporarily

The attachment in the present case was improvidently issued, and was rightly quashed by the Common Pleas.

The other justices concurred.

Let the order be affirmed.

CITED in *Ayres* v. *Bartlet*, 2 *Gr.* 332; *Brundred ads. Del Hoyo, Spencer* 333-335; *Phillipsburgh Bank* v. *Lackawana R. R. Co.*, 3 *Dutch*, 208; *Kugler* v. *Shreve*, 4 *Dutch* 129; *Hackettstown Bank* v. *Mitchell*, 4 *Dutch*. 518.