KINGSLAND & KINGSLAND vs. WORSHAM & ROBINSON.

1. Every casual and temporary absence of a debtor from his usual place of abode, is not a legal ground for issuing an attachment against his property; it must be such, as to prevent the service of ordinary process upon him. When, therefore, a summons issued upon the day the attachment is issued, can be served upon the defendant a sufficient time before the return day to give the plaintiff all the rights which he could have at the return term, the absence is not sufficient to authorize an attachment.

## APPEAL from St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

This was a suit by attachment, commenced July 23rd, 1850, for work and labor done and materials furnished. Plaintiffs made affidavits as required under the third clause of section 1st Article I, of the act entitled "an act to provide for the recovery of debts by attachment," Rev. Code 1845, in words and terms to wit: That they had good reason to believe and did believe "that the defendants above named, have absented themselves and do now absent themselves from their usual place of abode within this State, so that the ordinary process of law cannot be served upon them." Of the facts put in issue in this affidavit, defendants afterwards took advantage by a plea in abatement, in which they denied the truth thereof, and "that at the time the affidavit on which the attachment in this case issued was made, they had not absented themselves, and were not at the time absent from their usual place of abode within the State, so that the ordinary process of law could not be served upon them." On the issue joined in the foregoing plea, the cause was submitted to trial. On the trial the plaintiffs proved by one W. H. Turner, collector for them, that their account annexed to their petition, was repeatedly and at various times, presented for payment to one or the other of the defendants, and that the defendants always referred the same from one to the other, and failed to pay; that afterwards, witness went and examined to see if defendant's business was going on—that he went several times, and at last found the apparatus for the manufacturing of tobacco gone; that after this he found the defendant, Robinson's sign down; that he was then told that Worsham and Robinson were going to break and could'nt stand; that at length he was told that Robinson had gone to Virginia and Worsham to Cincinnati; that he inquired for the family of both, but could find none nor any agent of either, and that the third time he went there he found nobody. On cross-examination, witness testified that he knew nothing. as to co-partnership between defendants; that he met the defendant, Robinson, after he had been told that Robinson was going to Virginia; that he did not know but that defendant, Robinson, was in the city at the time of the attachment; that no inquiry was made as to defendant's whereabouts of T. T. Anderson & Co., where defendant's kept an account, or any of defendant's friends; nor did witness ever ask any one whether Worsham or Robinson had a family.

On the part of the defendants it was proved by one Gaylord, that in June and July last, the defendant, Robinson, had a tobacco factory; that the firm was E. S Robinson & Co.; that the defendant, Worsham, was Clerk; that said firm had an account with T. T. Anderson & Co., in whose banking house witness was, that Robinson had a house and family; that at one time both of the defendants were absent from the city; Worsham was at Cincinnati, whence he returned after an absence of about two weeks, and Robinson was in St. Charles county, whence he also returned after an absence of about three weeks, that both.

returned and resumed business with said banking house; that subsequently witness had often seen them in St. Louis, and supposed they then lived in the city; that Robinson's house was on Ninth, between Olive and Pine streets, that witness was at said house several times during Robinson's absence aforesaid, and always found it open and servants therein; that no inquiry was made for Worsham or Robinson at said banking house, and that if such inquiry had been made, witness would have given the desired information. The defendants also proved by one Wm. H. Timberlake, that between June and August of that year in which plaintiffs instituted their suit, said defendant, Robinson, was seen by him "a dozen times;" that defendant had a factory on Fifth street, and an office on St. Charles street; that witness saw him there twice in July; that previously said defendant had an office on Commercial street; that his name was on the office door on St. Charles street, a public place, and that witness called at said defendant's factory several times, and that he saw the defendant, Warsham, there.

Upon the evidence, the defendants prayed the Court to give the following instructions to the Jury:

1st. The jury are instructed, that the only question before them is, whether the defendants did absent themselves from their usual places of abode in this State, so that the ordinary process of law could not be served upon them, and not whether Turner so believed the fact.

2nd. Unless the jury find from the evidence that the defendants, when the attachment was issued, had absented themselves from their usual place of abode, so that the ordinary process of law could not be served upon them, they ought to find for the defendants.

3rd. If the jury find from the evidence, that the defendant, Robinson, went to the county of St. Charles, and was there at the time the attachment was issued, then the ordinary process of law could have been served upon him.

4th. If at the time the attachment was issued, the defendant, Robinson, was a house keeper in the city of St. Louis, and was only temporarily absent from the city in the county of St. Charles, then the ordinary process could have been served upon him.

5th. If the jury find that the place of residence and the place of business of the defendant, Worsham, at the time the attachment was issued in this cause, was in the city of St. Louis, and that he was only temporarily absent for business purposes, then he had not so absented himself from his usual place of abode as that the ordinary process of law could not be served upon him.

Of the above instructions the Court gave the first two, and referred the others, that is, referred the 3rd, 4th, and 5th; to which refusal to give said instructions, the defendants at the time excepted.

The Court then, on its own motion, gave the jury the following:

If the jury believe from the evidence, that the defendants, prior to the taking out of the attachments in this case, had absented themselves from their usual place of abode in this State, and remained absent until after the taking out of the attachment, and that during said time they had no families residing here, and left no white person of their families above the age of fifteen years at their usual place of abode, with whom a copy of the summons could be left, and no agent authorized to receive service of summons, then they will find for the plaintiff.

To the giving of this instruction and the refusal of those asked by the defendants, and the refusing defendant's motion for a new trial, (the jury having found for the plaintiffs,) the defendants excepted and assign the same for error.

## T. Polk, for appellants.

I. The common pleas court committed error in refusing the 3d instruction prayed by the defendants. For, whether the defendants were residents of the State of Missouri or not, if the defendant Robinson was in St. Charles county, ordinary process could have been served on him.

Kingsland & Kingsland vs. Worsham & Robinson.

Besides, he might have been sued in that county and might have been served with process .of summons there: Code of Practice article 4, section 1, first clause; Code of Practice article 5, sections 2, 3; Rev. Code 1845 page 1009, section 12.

II. Every fact hypothetically stated by the court in the instruction which it gave, may be conceded, and yet the ordinary process of law might have been served on the defendants, if they were in the State of Missouri.

See the statutory provisions cited above. The instruction therefore, needed the further additional qualification, that the defendants must have been absent from the State.

But the evidence showed that the defendant, Robinson, was in the State.

R. M. FIELD, for respondents.

There was no error in the instructions given by the court below to the jury: Temple vs. Cochran, 13 Mo. Reports 116; In vs. Thompson, 1 Wend. Rep. 43.

The facts disclosed in evidence, fully warrant the finding of the jury; for the defendants, making no provision for the payment of the plaintiff's bill, absented themselves from their usual place of abode, leaving no agent, and depriving the plaintiffs of the means of serving a summons.

GAMBLE, J., delivered the opinion of the court.

The act providing for the recovery of debts by attachment allows such writ to issue "where the debtor has absconded or absented himself from his usual place of abode in this State, so that the ordinary process of law cannot be served upon him." The attachment, in the present case, was issued upon an affidavit alleging, in the words of the law, that the defendants had absented themselves from their usual place of abode, &c. The truth of the affidavit was denied by plea, and upon the trial of the issue, several instructions asked by the defendants were refused, and one was given by the court on its own motion. Our attention will be given to this last instruction, as the views entertained by the court, in relation to the clause of the act under which this attachment issued, can be fully expressed in considering the correctness of this instruction.

The instruction asserts, as a matter of law, that the attachment under this clause of the statute, may be rightfully sued out in any case in which a defendant has absented himself from his usual place of abode in the State, and was absent at the time of the issuing of the attachment, if he had no family residing here and left no white person of his family above the age of fifteen years at his usual place of abode, and no agent authorized to receive service of a summons.

This is stated to the jury as the law in a case in which the attachment was issued on the 23d day of July, and the property of the defendant seized upon that day, and the defendants personally summoned on the writ on the first day of August, to appear at the third Monday of Sep-

tember to answer the action.    It is obvious, that if the meaning of the statute is properly expressed in this instruction, then every man in this State, whose domestic servants are negroes and who goes with his family upon a visit for a few weeks or even days to his friends in another State, or to another county in this State, is subject to have his property seized by any creditor upon an attachment, although it may be certain that he will return to his home in time to admit of the regular service of a summons upon him, returnable to the next term of the court in his county.    Or, a person engaged in business, who is a boarder at a Hotel, and is absent for a few days upon business or recreation, may, on his return, find all his effects in the hands of the Sheriff by a regular legal attachment.    Such a construction of the statute is not to be admitted, unless there is something in its language that absolutely requires us to give it this meaning.

There are two general objects proposed in the act; the first is, to subject the property of non-resident debtors to the demands of our own citizens; the second, to enable a creditor to seize the property of a debtor who has acted or is about to act fraudulently.    There are some cases specified in the act in which attachments may issue.    The first is, "where the defendant is not a resident of nor residing within the State."    All others are designed to reach the property of resident debtors.    The second, allows an attachment "where the debtor conceals himself so that the ordinary process of law cannot be served upon him."    This applies to the case of present misconduct of the debtor, by which the creditor is prevented from having his action against him in the ordinary mode.    The third, allows an attachment "where the debtor has absconded or absented himself from his usual place of abode in this State, so that the ordinary process of law cannot be served upon him."    If this clause includes two cases in which an attachment may issue, one because the debtor has absconded, and the other because he has absented himself from his usual place of abode; the first places the right to the attachment upon the misconduct of the debtor, in "withdrawing or absenting himself privately," which is the definition of absconding, and the second, upon his absenting himself from his usual place of abode, so as to produce the hindrance to the creditor in bringing his action in the ordinary mode.    If the clause embraces two distinct grounds of attachment then the language must not be so construed as to make one of them include the other.    If the case of the defendant's absenting himself from his usual place of abode is made to include all cases of such absence, then it is difficult to imagine a case in which the plaintiff would be required to swear that the debtor had absconded.    The last

Kingsland & Kingsland vs. Worsham & Robinson.

words of the sentence, "so that the ordinary process of law cannot be served upon him," seem to be applicable to both cases, and upon the supposed instruction, any absence would be just as good a ground for attachment, as the secret withdrawing which constitutes the absconding mentioned in the statutes. Regarding the clause as containing two distinct grounds of attachment, the first, or absconding, must subject the debtor to the process because of the character of his act, in secretly withdrawing himself from his residence; and the second, or absenting himself, must have the same effect, because of its continuance. The facts of the case, cited from 1 Wendell 43, furnish an illustration of the interpretation here given to the act. There, the defendant, a resident of New York, went to Scotland in 1824, partly on business and partly for pleasure. He continued absent although declaring his intention to return, and in 1826 the attachment was issued. Such absence, as he left no family, completely prevented the institution of a suit against him by ordinary process, and was held, under all the circumstances of the case detailed in the report, a good ground for an attachment under a statute that required a residence abroad to authorize such process to be issued. In mentioning this case, it is not intended to limit the operation of this clause of the statute to cases of like circumstances. is merely alluded to as a case in which the absence of the debtor from his place of abode had the effect of preventing the service of ordinary process.

While it is not admitted, that every casual and temporary absence of the debtor from his place of abode, which, from the brief period of his absence, may prevent the service of a summons, is a legal ground for issuing an attachment against his property, it is difficult to define the character and prescribe the duration of the absence which shall justify the use of this process. It may be asserted, however, that where the absence is such, that if a summons issued upon the day the attachment is sued out, will be served upon the defendant in sufficient time before the return day to give the plaintiff all the rights which he can have at the return term, the defendant has not so absented himself as that the ordinary process of law cannot be served upon him. This is probably sufficient for the present case. It shows the point in which, in our judgment, the court erred in the instruction given to the jury.

It is proper here to remark, that in construing this statute, it is not allowable to extend its operation to cases which are not within the evil it was designed to remedy. It is a statute under which much oppression may be practiced, and the legislature have felt the necessity of throwing guards around those against whom it may be employed. If

this court should sanction its use in a case not within the true scope and spirit of the act, upon the supposition that it may be brought within its letter, to that extent the precautions taken by the legislature to prevent the abuse of the process, would be useless to the injured party.

With the concurrence of the other judges the judgment is reversed and the cause remanded.