H. S. & W. S. SMITH v. DALTON, COLEMAN & Co.

FURNESS, BRINLEY & Co. v. THE SAME.

A., left Ohio with his family for New York, with the intention to return if he could compromise with his creditors there, or to remain if he could not do so and could get employment, neither of which contingencies happened. Attachments were levied on his real estate in Ohio, and he shortly afterward removed to Kentucky.

*Held*, that he was not a non-resident of Ohio within the meaning of the foreign attachment law.

Mere non-residence for any length of time, unless aided by some unequivocal act showing intention not to return, will not cause the loss of domicile in the State.

No bond was given according to S. & S. 593.—*Quere*, is this proceeding in error well taken?

ERROR TO SPECIAL TERM.—The facts are presented in the opinion of the court.

*Matthews & Ramsey*, for H. S. & W. S. Smith.

*Thomas T. Heath*, for Furness, Brinley & Co.

*Abram Brower*, for Coleman.

HAGANS, J.    These cases stand on the same question. They are foreign attachments, issued October 31, 1870, and levied upon real estate in this city, against Charles J. Coleman, one of the defendants; and the question is, whether he is a non-resident of this State within the meaning of the Code, and presents itself on his motion to dissolve,

which was overruled by the judge at Special Term, and exceptions taken.

The judge at Special Term made a special finding of facts on the evidence adduced at the hearing:

"That Charles J. Coleman, in consequence of the failure of business of the firm of Dalton, Coleman & Co., and partially influenced by the advice given to him by George W. Jones, as set forth in the affidavit of said Jones, went to New York to seek employment, and also to make an effort to obtain a compromise with the creditors of said firm, intending to return to Cincinnati if he could effect a compromise with the creditors, and to remain in New York if he obtained employment and could not effect a compromise—his intentions being conditional. That he remained in New York until about the middle of June, 1870, without employment and without effecting the compromise, when he removed to the 'Gatewood Farm,' in Campbell county, Kentucky, where he continues to reside with his family. That while in New York he wrote to H. P. & W. P. Smith a letter which is attached to the affidavit of W. P. Smith."

Referring to this letter, dated October 17, 1870, it appears that Coleman discussed with the Smiths the value of an interest in this city he had inherited, and assured them it was worth nothing; and stated he was unable to obtain employment, and was living on the charity of his wife's relatives, and expresses regret that they would not compromise.

The advice of Jones to Coleman, referred to by the judge in the finding of fact, was to the effect that Jones told Coleman, about May, 1870, that in the estimation of the business men of this city, the failure of Dalton, Coleman & Co. was brought about by the personal habits of Coleman himself, and he was looked upon with distrust and aversion, and he would find it hard, if not impossible, to get a situation here, where his way was hedged up; and Jones then advised him to leave this city and go to some other place, where he could enter business again under

more favorable circumstances.   Jones suggested New York, St. Louis, and Chicago as favorable points.   Coleman assented to these views, and the next day he and his wife went to New York with their baggage, and remained there until about November 20, 1870, when Jones leased to Coleman the 'Gatewood Farm,' in Kentucky, where he removed November 25, 1870, to be used as a dairy and a home, and he still resides there.

As a conclusion of law from the foregoing facts, the judge "finds that the said Coleman was not a resident of New York, or a non-resident of Ohio, at the date the attachments were issued, and that the attachments ought to be dissolved, which is done."   In looking into the affidavits, there are intimations that Coleman intended to return to this city at all events.   The error assigned is that the judge, at Special Term, ought not to have granted the motion to dissolve the attachments.

The attachment was issued on October 31, 1870, and if Coleman was then a non-resident, within the meaning of the attachment law, it was good.   It is said the *actual* non-residence of the defendant must determine the right to an attachment, although it may be admitted his domicil for many purposes may be in Ohio; and that unless this view of the law is adopted, a creditor will be frequently without any remedy against his debtor.   In support of this view the cases of *Isham* v. *Gibbons*, 1 Bradford, 69; *Haggart* v. *Morgan*, 1 Selden, 422; *Holmes* v. *Greene, etc.*, 7 Gray, 299, and *Whitney* v. *Sherborn*, 12 Allen, 111, are cited to us.   But one of these (1 Selden, 422) is a case founded upon an attachment, where that distinction is fairly recognized, and the court quotes, with approval, *The matter of Thompson*, 1 Wend. 45, and *Frost* v. *Brisbin*, 19 Wend. 14. The question of residence has frequently arisen, both in this country and in England, to determine the succession of personal property or jurisdiction as to the settlements of estates or the right to vote, etc., and it would not be profitable to discuss them in this connection, for one may have a resi-

dence for one purpose and not another. But in determining whether a party is a resident or non-resident within the meaning of the attachment law, the question as to his domicile is not always involved. A man may have a residence which is not in law his domicile. "Domicile includes residence, with an intention to remain, while no length of residence, without the intention of remaining, constitutes domicile." (Drake on Attachment, sec. 58.)

. There can, then, be but one question for us to determine, viz: whether Coleman had the intention of remaining in New York at the time the attachment was issued.

In this case there can be no question but that Coleman's residence was in Ohio before he went to New York. Now, it depends on all the facts and circumstances of the case whether he then lost it. It is not enough that he should leave his place of abode in Cincinnati, and should go to New York to seek a new residence (*Pfoutz* v. *Comford*, 36 Penn. St. 420); for he does not thereby acquire a new residence, but still retains the old one. "Residence," says the court, in the case just cited, "is, indeed, made up of fact and intention. It is not broken by seeking another abode, but continues till the fact and intention unite in another abode elsewhere." And this court has recognized the same doctrine in *Eagan* v. *Lumsden, etc.*, 2 Disney, 168, where it is said, "that absence from one's home for years, when the party left with the intention to return, if, in the meanwhile, the intention to return is not destroyed by some *unequivocal* act, signifying a purpose to change the domicile, does not defeat this right to claim his former residence as if it had never been interrupted by his absence." The mere intention to remove, without actual removal, will not avail, any more than the fact of removal without the intention to acquire a new residence. And one can not be said to have acquired a new residence until he has lost the old one. The very fact that Coleman's remaining in New York was contingent, and that that contingency had not happened when these attachments were sued out,

would seem to be decisive in the views which we have expressed. And we are satisfied that not until he resolved to remove to Kentucky, and did so, did he lose his residence in Ohio. But this was after the attachments were issued.

In this issue, the burden of proof is on the plaintiffs, and the fact of non-residence must be made out to the satisfaction of the court. (*Canton* v. *Paige*, 9 Ohio St. 397.)

We do not think the party has done so; for besides the fact that Coleman had valuable interests here, there are declarations of an intention on his part to return to Ohio while he was in New York. Our attention has been called to the fact that there is no compliance with the amended act relating to proceedings in error in this class of cases. (S. & S. 593.) We find that no bond has been given. This may be fatal to this proceeding in error. We have preferred, however, to dispose of the case on its merits.

The judgment must be affirmed.