## SUPREME COURT.

.HARRIET KISSAM agt. WILLIAM T. HAMILTON.

BENJAMIN K. BROTHERSON agt. SAME.

JOSEPHINE KISSAM agt. SAME.

ELIZA A. VROOMAN agt. SAME.

PETER R. K. BROTHERSON agt. SAME.

SAMUEL M. KISSAM agt. SAME.

An action of *ejectment*, or for possession of real property, against a *sole defendant*, who *dies* before a *report of referees is made*, or verdict rendered, *abates*, *absolutely*, and no judgment upon such report or verdict can be entered *nunc pro tunc*, because such report or verdict is null and void.

A report of referees is not considered made nor the case decided until, the report is *signed*. The *delay by referees* in making and delivering their report, that is, while the case remains with them *sub judice*, is not to be deemed the *delay of the court*.

*Saratoga Special Term, December*, 1860.

MOTION for leave to file referee's report in each of these actions *nunc pro tunc* as of July 1, 1857, and to enter judgment therein, the defendant having died; also to substitute Elisha G. Shepard as defendant in each cause. The actions were ejectment. They were commenced in 1854-5. They were put at issue and referred *by consent of parties* to Judge PAIGE, Judge GIBSON and Judge BELDING, as referees, who

heard the same, and to whom they were finally submitted, in January, 1856. In January, 1858, the defendant Hamilton died. In August, 1859, the referees made their report in each cause in favor of the defendant. Afterwards Elisha G. Shepard purchased the premises of the heirs at law of Hamilton, deceased, and entered into possession. The remaining facts will appear in the opinion.

BOCKES, Justice. The motion for leave to file the report of the referees in these actions, and to enter judgment *nunc pro tunc*, was first made before me in July last, and it seemed to me that there was an insuperable difficulty in the way of the motion, for the reason that there was no defendant, nor any one, before me, representing the interest of the late defendant in the actions. The motion was made by the attorney for the late defendant, and in behalf of his administrators.

The notice of motion was by E. F. B., "attorney for defendant, and for administratrix and administrators of said Hamilton." But the attorneyship for Hamilton terminated on his decease, and the administrators of his estate had no fixed or determinate right or interest in his real property, which descended to his heirs at law, subject to the payment of such of his debts as should remain unsatisfied after the due application of his personal effects. All the moving affidavit stated on this subject was this: "that said defendant Hamilton died about January, 1858, and Fanny R. Hamilton was appointed administratrix, and Roscius R. Kennedy, administrator of his estate."

The papers, therefore, did not show that the moving parties had any standing in court on the motion, unless it could be maintained that the causes of action, (the actions were ejectment,) survived against the personal representatives of the deceased defendant.

It seemed to me very plain, that such causes of action did not survive, and understanding that Mr. Shepard had,

through the heirs at law, of the deceased defendant, succeeded by purchase, to his interest in the premises in controversy, it was suggested that he should apply, if he desired the benefits and risks of the litigation, to be substituted as defendant in the place of Hamilton, deceased. It appeared to me that there could then be no valid objection to the motion, as Mr. Shepard was abundantly responsible; was in the actual possession of the premises, and the plaintiffs could then appeal if dissatisfied with the judgment, without delay or compromise of rights. I deemed it eminently just and desirable to secure to those interested, the rights and advantages resulting from the trials already had at a great expense of time, labor and money.

In accordance, with this suggestion, Mr. Shepard presented his petition, praying to be substituted in the actions as defendant in the place and stead of Hamilton deceased, and on the hearing of the motion for such substitution, on 31st December, 1860, I announced to the counsel for the respective parties, that I would consider both motions together.

It is hardly necessary to remark, that the results of the litigation in these causes should be secured if possible, inasmuch as it is fair to assume that the questions litigated before the eminent counsel who, as referees, decided these cases, have been fully and carefully considered and correctly determined.

I am constrained, therefore, to grant the motion unless it would be in direct violation of well settled rules of law.

The actions were brought in 1854–5, to recover real property, the plaintiffs claiming respectively the same lot, intending, doubtless, on the trial to succeed each for an undivided part. The actions were put at issue, and were refered to these referees to hear and determine. · They were heard before the referees, and finally submitted to · them in January, 1856. The referees held them under advisement, until August, 1859, when they made and signed their report

in favor of the defendant.   In the meantime, and in January, 1858, the defendant Hamilton, died.

His heirs at law, conveyed the premises to Elisha G. Shepard, who is now in the actual possession of the premises, claiming to own them in fee.

The objection to the motions is that the causes of action did not survive ; that the actions abated on the decease of Hamilton, in January, 1858.

At common law, the death of a sole plaintiff or sole defendant, before final judgment abated the suit; so the action of ejectment abated at common law, on the decease of a sole defendant before verdict.   (*Putnam* agt *Van Buren*, 7 *How.*, 31 ; *Moseley* agt. *Alb. N. R. Co.*, 14 *How.*, 72.)   In the last case cited, PAIGE, J., remarked, a cause of action in tort, as for example, an entry into the lands of another, and the unlawful withholding from him of the possession thereof, is personal to the tort feasor ; it dies with his person and cannot at common law be continued against his grantee by a transfer of his interest in the real property in respect to which the tort was committed.   (*See also Vrooman* agt. *Jones*, 5 *How.*, 370.)   It was said, however, in *Requa* agt. *Holmes*, (19 *How.*, *on page* 433,) that while the death of the party abated the suit as to him, and his interest in the lands, such event did not remit the proceedings as regarded his heirs at law, to the same condition as if no action had been taken, but that the action could be revived.  But the learned judge was here speaking of an action of partition, which is saved by statute.   (2 *R. S.*, 387, §§ 6 *and* 7.)   But without extending the examination to cases other than those sounding in tort, it is beyond dispute that at common law, the death of a sole plaintiff or sole defendant before judgment or verdict in an action *ex delicto*, abated the action.   The cause of action died with the person.   (7 *How.*, 32, *supra.*)

Is the law changed by statute ?   It is provided by statute that the action of ejectment shall not abate by the death

of any plaintiff, or of *one* of several defendants, after issue and before verdict or judgment; but the same proceedings may be had as in other actions to substitute the name of those who may succeed to the title of the plaintiff so dying, in which case the issue shall be tried as between the original parties; and in case of the death of a defendant, the cause shall proceed against the other defendants. (2 *R. S.*, 308, § 32.)

This statute does not reach the case of the decease of a sole defendant before verdict or judgment. It is in aid of a case in which a plaintiff or *one* of several defendants in ejectment dies before verdict or judgment. (*James* agt. *Burnett*, 10 W*end.*, 540; *Boynton* agt. *Hoyt*, 1 *Denio*, 53.) The heirs at law, or successors in interest of a sole defendant who dies before verdict obtain no right of revivor or of substitution under this statute.

It is provided by section four, (2 *R. S.*, 387, § 4,) that after verdict shall be rendered in any action, if either party die before judgment be actually entered thereon, the court may, within two terms after such verdict, enter final judgment in the name of the original parties; and the Code (*last clause of section* 121,) declares that after a verdict shall be rendered in any action for a wrong, such action shall not abate by the death of any party, but the case shall proceed thereafter in the same manner as in cases where the cause of action now survives by law.

Had the reports of the referees in the cases in which this motion is made, been signed and delivered before the death of Hamilton, the practice would have been plain, to allow the cases to proceed in the same manner as in cases where the cause of action now survives by law.

This brings me to consider the question, whether the reports of the referees are to be treated and considered the same as would be the verdict of a jury, which also involves the question in regard to the time when the reports shall be deemed to have taken effect.

It may be safely assumed, I apprehend, that the report of referees is within the spirit of the statute regulating the entry of judgment after the death of a party, on verdicts rendered by juries.  It has been so decided.  (*Scranton* agt. *Baxter*, 3 *Sandf.*, 660 ; *Burhans* agt. *Burhans*, 10 *Wend.*, 601 ; *Ehle* agt *Moyer*, 8 *How.*, 244.)

On this point the facts are, that the cases were submitted to the referees, January 1856 ; the defendant died January, 1858, and the referees' reports were made August, 1859.  Do the decisions of the referees relate back and take effect as of the time when the cases were submitted ?  Regarding the reports as verdicts, and how stands the question ?

It was formerly the law that a verdict and judgment related back to the first day of the term at which they were rendered.  Hence if the party were alive after that day, no note need be taken of his decease, but the costs could be taxed and judgment entered after his death  (*Morris* agt. *Carson*, 7 *Cow*, 281.)  But it is now declared by statute, that a verdict is absolutely void, unless actually rendered before the decease of the party.  (2 *R. S.*, 387, § 5.)  Sections one, two, three and four, provide for the continuance of actions in certain cases therein specified, and by section five, it is declared that nothing therein contained, shall be construed to authorize the entry of a judgment against a party who shall have died before a verdict *actually rendered* against him, notwithstanding he may have died on the first or any other day of the term or sitting of the court at which such verdict shall have been taken ; *but such verdict shall be absolutely void.*

This statute takes away all right to give a verdict effect by relation, but if actually rendered in the lifetime of the parties, it will be saved by other statutes.

But it is urged that the court will not permit the rights of parties to be prejudiced by its own delay.  This is a sound rule, the aid of which is often invoked.  It has been frequently applied to cases where proceedings were

stayed or delayed *after verdict*, or after the rights of the parties had been in some way, or to some extent concluded. I know of no case, since the statute above cited, where judgment has been ordered *nunc pro tunc* on a verdict or report of referees, unless such verdict or report was obtained during the life of the parties.

It was held in *Ogden* agt. *Lee*, (3 *How.*, 153,) that the right to have the judgment, must be determined during the life of the other party. So if the right is concluded by verdict, non-suit, report of referees or the like, and for any reason the case is thereafter held *sub judice*, and during such time the defendant dies, judgment will be ordered *nunc pro tunc*, or such other proceedings will be permitted as will secure the benefits and advantages of the verdict. (18 *Wend.*, 543; 10 *Wend.*, 601; 12 *Wend.*, 245; 4 *Barb.*, 504; 4 *Cow.*, 423; 1 *How.*, 140; 3 *How.*, 153; 8 *How.*, 244; 20 *Wend.*, 677.) This course would be permitted too, on common law principles. (*See cases cited.*)

It will be seen on examination, that in all these cases, the rights of the litigants had been determined either by verdict, report of referees or non-suit before the decease of the party.

The case of *Ehle* agt. *Moyer*, (*supra*,) is cited as an exception, and as an authority in favor of the motion. But the decision in that case was put expressly on the ground that the case stood the same as if there had been a verdict or report of referees before the decease of the party, by which the rights of the parties were concluded. Judge ALLEN then said, that by the previous proceedings the case stood " *the same as if after verdict* ;" and he added, that it was " like that class of cases where the party having obtained a verdict or non-suit, dies while the cause is *sub judice*."

In *Rightmyer* agt. *Dunham*, (12 *Wend.*, 245,) the decision was put on the ground that the plaintiff having obtained a

verdict before the decease of the party, had thus established his cause of action.

But can the delay by referees in making and delivering their report be deemed the delay of the court? I think not. The case proceeds according to the common course of the law. It must be assumed that referees do not conclude their deliberations or arrive at a result until the report is made. The case is not decided until the report is signed; until then they may open it for further evidence; reconsider and change their conclusions. (*Ayerault* agt. *Sackett*, 17 *How.*, 507.) While the case is under consideration by the referees, after being submitted, they occupy the same position and relation to it, with some additional powers however, as a jury while deliberating. As well might it be said that the period of deliberation by a jury was the delay of the court, as to say the same of the time taken by referees to determine on and make their report.

It has been assumed that the report of referees and verdict of a jury might be deemed to stand alike for all the purposes of this motion.

The statutes relating to verdicts should then apply to reports of referees. It follows, therefore, that the report of referees, like the verdict of a jury, is absolutely void, unless rendered in the life of the party against whom it is made. The actions in which these motions are made, abated, on the decease of the defendant Hamilton, in January, 1858, a year and a half prior to the making of the referees' report.

The actions were for unlawfully withholding real property. This was the alleged cause of action against Hamilton in each case. Such causes of action did not survive or continue against his heirs at law, personal representatives or successors in interest, but died with his person. Such was the common law, and there is no statute which saves them, or under which they can be revived or continued. The plaintiffs in these actions could not compel

either the heirs at law of the deceased defendant, or any one who might succeed to his interest in the premises to come in and defend.  This I understand to be decided in *Putnam* agt. *Van Buren*, (7 *How.*, 31,) which is a general term decision, overruling *Waldorph* agt. *Bortle*, (4 *How.*, 358).  This being so, it would seem to follow that the heirs and successors in interest of the deceased defendant cannot compel the plaintiffs to accept them as defendants in his place.

But the right to move to have an action continued under section 121, of the Code, after one year from the death of a party, is not given to the heirs at law or personal representatives or successors in interest of a deceased defendant in any case.  (*Keene* agt. *La Farge*, 16 *How.*, 377.)  Nor can Mr. Shepard come in under the clause of section 121, which provides that in case of any other transfer of interest, the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action.  This clause contemplates a transfer other than by death ; contemplates an existing pending action, and the substitution of one person in the place of another; not a case where the action has abated by the death of a party.

So, too, section 118 of the Code, has here no application to an action which has abated.

I find, therefore, that my suggestion to have Mr. Shepard substituted as defendant in the action in the place of Hamilton, deceased, was without foundation.  There is clearly no authority for it.

In my judgment the actions abated on the decease of the sole defendant, in January 1858 ; and further, that the referees' reports made in August, 1859, in the actions were nullities.  Hence the motions must be denied; but without costs.

In regard to the case in which Samuel M. Kissam is plaintiff, it is shown that he is also dead, and that he died before

the cause was submitted to the referees. This fact would dispose of the motion as to that case. But if correct in the views above taken it is unnecessary to take notice of this fact.

I have held the papers on the first motion an unusually long period of time, hoping to see my way clear to a decision favorable to the application; and have examined both motions carefully, and with a strong desire to decide them in some way to give effect to the conclusions of the referees. But the law is clearly adverse to the motions, and I am compelled, reluctantly, to deny them.

Motions denied, but without costs.